## No. 16-1439

# In the
# United States Court of Appeals
## for the Seventh Circuit

WESTFIELD INSURANCE COMPANY,

*Plaintiff-Appellant,*

v.

NATIONAL DECORATING SERVICE, INC., et al,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division, No. 1:14-cv-01572.
The Honorable **John Robert Blakey**, Judge Presiding.

## BRIEF AND SHORT APPENDIX OF PLAINTIFF-APPELLANT
## WESTFIELD INSURANCE COMPANY

DAVID S. OSBORNE *(Counsel of Record)*
CHRISTOPHER J. PICKETT
LINDSAY, RAPPAPORT & POSTEL, LLC
10 South LaSalle Street
Suite 1301
Chicago, Illinois 60603
(312) 800-6025

*Attorneys for Plaintiff-Appellant*
*Westfield Insurance Company*

 COUNSEL PRESS · (866) 703-9373          PRINTED ON RECYCLED PAPER 

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: No. 16-1439

Short Caption: Westfield Ins. Co. v. National Decorating Service, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[   ]       PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Westfield Insurance Company

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Lindsay, Rappaport & Postel LLC

(3)  If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

Ohio Farmers Insurance Company

ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

None

Attorney's Signature:  s/  David S. Osborne          Date:  March 21, 2016

Attorney's Printed Name:  David S. Osborne

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes**  X   **No** _____

Address:  10 S. LaSalle St., Chicago, Illinois 60603

Phone Number:  312-800-6025          Fax Number:  312-629-1404

E-Mail Address:  dosborne@lrplawfirm.com

rev. 01/15 GA

TABLE OF CONTENTS

Page No.

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ........................................................... i

TABLE OF AUTHORITIES ............................................................................................. iv

JURISDICTIONAL STATEMENT ..................................................................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................................................... 3

STATEMENT OF THE CASE ........................................................................................... 4

SUMMARY OF ARGUMENT ......................................................................................... 16

ARGUMENT ............................................................................................................... 19

I.     THERE IS NO COVERAGE FOR DAMAGE TO THE CONDOMINIUM BUILDING
       ITSELF .......................................................................................................... 19

II.    THERE IS NO DAMAGE TO "OTHER PROPERTY" AT ISSUE IN THE UNDERLYING
       SUIT ............................................................................................................. 21

       A.     Damage to Walls, Ceilings and Floors is Damage to the "Project
              Itself." ............................................................................................... 23

       B.     Damage to the "Work of Other Trades" is also Damage to the
              "Project Itself." ................................................................................. 27

       C.     The Association Does Not Seek to Recover, and Could Not Even
              in Principle Recover, for Damage to the Unit Owner's Personal
              Property ............................................................................................. 34

              1.     The Condominium Association Never Sought any
                     Damages for Injury to Personal Property of its Unit
                     Owners in its Complaint ....................................................... 35

2.     **The Condominium Association Does Not Even Arguably Have Legal Standing to Seek Damages for Injury to the Personal Property of its Unit Owners** ................................................42

3.     **The Undisputed Evidence Confirms that the Condominium Association Did Not Even Intend to Make a Claim for Damage to the Personal Property of its Unit Owners** ................................................45

4.     **None of the Claims Pled by the Condominium Association Would Give Rise to Any Recovery for Property Damage** ..............46

III.     THE DISTRICT COURT'S THEORY BASED UPON THE ADDITIONAL INSURED ENDORSEMENT IS DEEPLY FLAWED, BECAUSE THAT SECTION OF THE POLICY DOES NOT EXPAND THE SCOPE OF COVERAGE AT ALL ................................................48

CONCLUSION ................................................................................................54

TABLE OF AUTHORITIES

## Cases

*1324 W. Pratt Condo. Ass'n v. Platt Constr. Group,*
    936 N.E.2d 1093 (Ill.App. 2010) ................................................................33

*2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.,*
    555 N.E.2d 346 (Ill. 1990) ........................................................................32

*Abram v. Litman,*
    501 N.E.2d 370 (Ill.App. 1986) ................................................................46

*Abrams v. Rapoport,*
    516 N.E.2d 943 (Ill.App. 1987) ................................................................46

*Acuity v. Lenny Szarek, Inc.,*
    13 C 7505, 2015 WL 5163195 (N.D.Ill. Sept. 2, 2015).......................21, 43, 53

*Addison Ins. Co. v. Fay,*
    905 N.E. 2d 747 (Ill. 2009) ......................................................................19

*American Country Ins. Co. v. Cline,*
    722 N.E.2d 755 (Ill.App. 1999) ................................................................51

*American Family Mut. Ins. Co. v. Hummel Development Group, LLC,*
    No. 11 CH 24601, 2013 WL 6631068 (Cir.Ct. Cook Co., IL Nov. 21, 2013) ..............28

*American Fire & Cas. Co. v. Broeren Russo Constr., Inc.,*
    54 F.Supp.2d 842 (C.D.Ill. 1999) ........................................................22, 28

*American Trucking & Transp. Ins. Co. v. Allied Tube & Conduit Corp.,*
    491 Fed.Appx. 756 (7th Cir. 2012)............................................................51

*Auburn v. Amoco Oil Co.,*
    435 N.E.2d 780 (Ill.App. 1982) ................................................................46

*Birchler v. Gehl Co.,*
    88 F.3d 518 (7th Cir. 1996) ......................................................................53

iv

*Bituminous Casualty Corp. v. Gust K. Newberg Construction Co.,*
578 N.E.2d 1003 (Ill.App. 1991) ................................................................42

*CMK Development Corp. v. West Bend Mut. Ins. Co.,*
917 N.E.2d 1155 (Ill.App. 2009) ...................................... 23-25, 27

*Crane Erectors and Riggers, Inc. v. LaSalle Nat. Bank,*
466 N.E.2d 397 (Ill.App. 1984) ................................................................26

*Crawford Laboratories, Inc. v. St. Paul Ins. Co. of Illinois,*
715 N.E.2d 653 (Ill.App. 1999) .......................................... 41-42

*Crescent Pk. Tenants Assoc. v. Realty Eq. Corp. of N.Y.,*
275 A.2d 433 (N.J. 1971) ................................................................43

*Diamond State Ins. Co. v. Chester-Jensen Co., Inc.,*
611 N.E.2d 1083 (Ill.App. 1993) ................................................................42

*Donven Homes, Inc. v. Amerisure Ins. Co.,*
2012 IL App (1st) 102790 (Ill.App. 2012) ...................................25

*East River Steamship Corp. v. Transamerica Delaval, Inc.,*
476 U.S. 858 (1986) ................................................................30

*Farmers Auto. Ins. Ass'n v. Danner,*
967 N.E.2d 836 (Ill.App. 2012) ................................................................37

*Gazarkiewicz v. Town of Kingsford Heights, Indiana,*
359 F.3d 933 (7th Cir. 2004) ................................................................19

*Great Lakes Dredge & Dock Co. v. City of Chicago,*
260 F.3d 789 (7th Cir. 2001) ................................................................38

*Hartford Acc. & Indem. Co. v. Case Foundation Co.,*
294 N.E.2d 7 (Ill.App. 1973) ................................................................28

*Hartford Cas. Ins. Co. v. Construction Builders in Motion, Inc.,*
966 F.Supp.2d 777 (N.D.Ill. 2013) ...........................................28, 53

*Hartford Fire Ins. Co. v. Flex Membrane Int'l, Inc.,*
No. 00 C 5765, 2001 WL 869623 (N.D.Ill. Aug. 1, 2001) ............................................28

*Health Care Industry Liability Ins. Program v. Momence Meadows Nursing Center, Inc.,*
566 F.3d 689 (7th Cir. 2009) ................................................................... 35-38

*Illinois Emcasco Ins. Co. v. Waukegan Steel Sales, Inc.,*
996 N.E.2d 247 (Ill.App. 2013) .............................................................................24

*Indiana Ins. Co. v. Hydra Corp.,*
615 N.E.2d 70 (Ill.App. 1993) ..........................................................................20, 25

*Insolia v. Philip Morris Inc.,*
216 F.3d 596 (7th Cir. 2000) .............................................................................53

*ISMIE Mut. Ins. Co. v. Michaelis Jackson & Assoc., Inc.,*
921 N.E.2d 1156 (Ill.App. 2009) ........................................................................42

*Lagestee-Mulder, Inc. v. Consolidated Ins. Co.,*
682 F.3d 1054 (7th Cir. 2012) .....................................................20, 45, 49, 52

*Lemko Corp. v. Fed. Ins. Co.,*
12 C 03283, 2014 WL 4924403 (N.D.Ill. Sept. 30, 2014)..............................................36

*Liberty Mut. Fire Ins. Co. v. Woodfield Mall, L.L.C.,*
941 N.E.2d 209 (Ill.App. 2010) .........................................................................51

*Lincoln General Ins. Co. v. Federal Const., Inc.,*
No. 09 C 6087, 2010 WL 4978852 (N.D.Ill. Dec. 2, 2010) ...........................................51

*Lyerla v. AMCO Ins. Co.,*
536 F.3d 684 (7th Cir. 2008) .........................................................................20

*Mars, Inc. v. Heritage Builders of Effingham,*
763 N.E.2d 428 (Ill.App. 2002) ..........................................................................31

*Medmarc Cas. Ins. Co. v. Avent America, Inc.,*
612 F.3d 607 (7th Cir. 2010) .............................................................. 38, 42-43

*Monticello Ins. Co. v. Wil-Freds Const., Inc.*,
661 N.E.2d 451 (Ill.App. 1996) ........................................................... 25, 40-41

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
435 N.E.2d 443 (Ill. 1982) .................................................................. 29

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Absolute Title Services, Inc.*,
No. 09 C 4165, 2011 WL 4905660 (N.D.Ill. Oct. 13, 2011) ........................... 36

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Mead Johnson & Co. LLC*,
735 F.3d 539 (7th Cir. 2013) ............................................................... 35

*Nautilus Ins. Co. v. Board of Directors of Regal Lofts Condominium Ass'n*,
764 F.3d 726 (7th Cir. 2014) ............................................................... 19

*Nautilus Ins. Co. v. JDL Development, IX, LLC*,
No. 10 C 3435, 2012 WL 1156917 (N.D.Ill. Apr. 4, 2012) ............................ 26

*Ohio Cas. Ins. Co. v. Bazzi Constr. Co.*,
815 F.2d 1146 (7th Cir. 1987) ............................................................. 33

*Owings v. Estes*,
100 N.E. 205 (Ill. 1912) ..................................................................... 26

*Paradise Inground Pools, Inc. v. Black Diamond Plumbing and Mech., Inc.*,
2012 IL App (2d) 110819-U (Ill.App. 2012) ............................................. 28

*Pekin Ins. Co. v. Richard Marker Assoc., Inc.*,
682 N.E.2d 362 (Ill.App. 1997) ........................................................... 34

*Pekin Ins. Co. v. Wilson*,
930 N.E.2d 1011 (Ill. 2010) ................................................................ 46

*Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*,
771 F.3d 391 (7th Cir. 2014) ............................................................... 28

*Poulet v. H.F.O., L.L.C.*,
817 N.E.2d 1054 (Ill.App. 2004) .......................................................... 43

*QBE Ins. Corp. v. Barrier Corp.,*
    No. 11 CH 9383, 2012 WL 6900226 (Cir.Ct. Cook Co., IL Nov. 19, 2012) .........26, 28

*Redarowicz v. Ohlendorf,*
    441 N.E.2d 324 (Ill. 1982) .......................................................................................32

*SCR Medical Transp. Services, Inc. v. Browne,*
    781 N.E.2d 564 (Ill.App. 2002) ............................................................................ 36-37

*Stoneridge Development Co., Inc. v. Essex Ins. Co.,*
    888 N.E.2d 633 (Ill.App. 2008) ..............................................................................46

*Trans State Airlines v. Pratt & Whitney Canada, Inc.,*
    682 N.E.2d 45 (Ill. 1997) .................................................................................... 30-31

*Travelers Ins. Co. v. Eljer Mfg., Inc.,*
    757 N.E.2d 481 (Ill. 2001) ......................................................................................19

*United States v. Aetna Cas. & Sur. Co.,*
    338 U.S. 366, 70 S.Ct. 207 (1949) .........................................................................44

*Viking Const. Management, Inc. v. Liberty Mut. Ins. Co.,*
    831 N.E.2d 1 (Ill.App. 2005) .............................................................................21, 28

*Walker v. Ridgeview Const. Co., Inc.,*
    736 N.E.2d 1184 (Ill.App. 2000) ............................................................................44

*Westfield Ins. Co. v. Total Roofing and Const. Services, Inc.,*
    No. 2013 CH 20823, 2016 WL 531025 (Ill.Cir.Ct. Feb. 8, 2016) ...............................43

*Westfield Ins. Co. v. West Van Buren, LLC,*
    ___N.E.2d___, 2016 IL App (1st) 140862 (Ill.App. 2016)....................39-40, 43-45, 52

*William J. Templeman Co. v. Liberty Mut. Ins. Co.,*
    735 N.E.2d 669 (Ill.App. 2000) ..............................................................................44

**Statutes**

28 U.S.C. §1332 ....................................................................................................1

735 ILCS §5/2-403(c)............................................................................................44

765 ILCS §605/9.1(b)......................................................................................40, 42

FRCP 30(b)(6)................................................................................................14, 46

**Secondary Sources**

Robert J. Franco and Christopher M. Cano, 24 Illinois Practice, ILLINOIS CONSTRUCTION
LAW MANUAL §12:3 (2016 ed.) ...............................................................................43

Robert J. Franco and Christopher M. Cano, 24 Illinois Practice, ILLINOIS CONSTRUCTION
LAW MANUAL §12:4 (2016 ed.) ...............................................................................21

## JURISDICTIONAL STATEMENT

Appellate jurisdiction is proper as this is an appeal from the Order entered on November 25, 2015 granting the Defendants' motion for summary judgment (Dkt. 125-126; A.1-19). Judgment was entered February 2, 2016 (Dkt. 146; A.20). Defendants' motion to alter or amend the judgment was granted in part and denied in part on May 3, 2016 (Dkt. 167; A.21). All matters before the District Court were disposed of by the Orders of November 25, 2015 and May 3, 2016 (Dkt. 125-126; Dkt. 167; A.1-21). Notice of Appeal was filed on February 29, 2016 (Dkt. 149).

Jurisdiction in the District Court was based upon diversity of citizenship pursuant to 28 U.S.C. §1332. Plaintiff Westfield Insurance Company ("Westfield") is an Ohio corporation, with its principal place of business in Westfield Center, Ohio (Dkt. 24-1). Defendant National Decorating Service, Inc. ("National") is a Delaware corporation with its principal place of business located in Oak Brook, Illinois (Dkt. 24-2). Defendant James McHugh Construction Company ("McHugh") is an Illinois corporation with its principal place of business in Chicago, Illinois (Dkt. 120 at 2; Dkt. 24-3). Defendant 200 North Jefferson, LLC ("200 North") is an Illinois limited liability company, whose members are Charley Huzenis and Harry Huzenis, both of whom are citizens of Illinois (Dkt. 120; at 3; Dkt. 72-1 at 2).

Defendant MCZ/Jameson Development Group LLC ("MCZ") is a limited liability company organized under the laws of Delaware (Dkt. 120 at 3). Its members are

Bernard Leviton, Michael Lerner, Charles Huzenis and Harry Huzenis, all of whom are Illinois citizens (Dkt. 120 at 3).

Westfield initially named as a Defendant the architect for the project at issue, Loewenberg & Associates, a dissolved Illinois corporation with its last principal place of business in Chicago, Illinois (Dkt. 1; Dkt. 54-2 at 7, par. 12). That Defendant withdrew its tender of defense to Westfield and was dismissed pursuant to FRCP 41(a)(1)(A)(i) on April 8, 2014 (Dkt. 13).

Westfield previously named as a nominal but indispensable party the underlying plaintiff, the Board of Managers of 200 North Jefferson Tower Condominium Association ("the Association"), not in order to seek any recovery against it, but solely to assure that it be bound by the judgment (Dkt. 1 at 2). The Association signed a Stipulation to be bound by the judgment on August 5, 2014 (Dkt. 41-1), and was accordingly dismissed by motion filed under FRCP 41(a)(2) on August 27, 2014 (Dkt. 41; Dkt. 43).

The underlying complaint seeks damages in excess of $1,000,000 (Doc. 1-4, ¶52) The Westfield policy provides for $1,000,000 per-occurrence limits of liability, in addition to defense fees and costs (which are not capped by the limit of liability) (Doc. 1-9, p. 29). The underlying case seeks liability against the Defendants for serious, pervasive construction defects throughout a 24-story condominium building which they

constructed from the ground up (Dkt. 54-2).

As of January of 2016, the underlying case had progressed only through motions to dismiss and written discovery (Dkt. 141-1 at 3-7, pars. 9-14; Dkt. 143-1 at 4, 6 pars. 11, 16). The amount of fees and costs claimed by the insureds for that introductory phase alone exceeded $600,000 (Dkt. 140; Dkt. 141-1; Dkt. 143-1). Therefore, the amount at issue in this case is well in excess of $75,000.

### STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Whether construction defect damage to a new-construction building – limited to the building itself – can be considered "property damage" which is "caused by an 'occurrence,'" (defined in relevant part as an "accident"), as those terms are used in a standard-form Commercial General Liability ("CGL") policy, under Illinois law.

2.    Whether allegations by an Illinois condominium association in an underlying complaint that construction defects caused damage to its constituent owners' personal property should be taken into account in determining the duty to defend, where the association does not have standing by statute to do so and does not even profess to attempt to recover such damages on their behalf.

3.    Whether the longstanding Illinois rule that construction defect damages to a new-construction building are not even potentially covered under a CGL policy should now be altered to allow for coverage for all such damages, except those to the

named insured's own work.

## STATEMENT OF THE CASE

Westfield filed this declaratory judgment action on March 6, 2014, seeking a judicial declaration that it owed no duty to defend or indemnify National, 200 North, McHugh or MCZ ("Defendants") in the underlying suit (Dkt. 1).   On May 6, 2014, Westfield filed an amended complaint (Dkt. 28).  200 North answered and filed a Cross-Claim against National (Dkt. 33).  The Cross-Claim was stayed on June 18, 2014 (Dkt. 39), and voluntarily dismissed on December 16, 2015 (Dkt. 135).

On December 30, 2014, Westfield filed a second amended complaint (Dkt. 54). National, McHugh and 200 North each answered the second amended complaint on January 30, 2015 (Dkt. 57; Dkt. 58; Dkt. 59).   MCZ answered the second amended complaint on October 14, 2015 (Dkt. 119).

McHugh filed a motion for summary judgment on April 20, 2015 (Dkt. 65; Dkt. 69; Dkt. 83). Westfield filed a motion for summary judgment on April 27, 2015 (Dkt. 70-72), as did National (Dkt. 73-75), and 200 North (Dkt. 76-78).  The cross-motions for summary judgment were briefed extensively through November 4, 2015 (Dkt. 81; Dkt. 84-110; Dkt. 115; Dkt. 123).

On November 25, 2015, the District Court issued a memorandum opinion and Order granting Defendants' motions for summary judgment and denying Westfield's

motion for summary judgment, finding that Westfield had a duty to defend all of the Defendants (Dkt. 125-126). On January 15, 2016, 200 North and National filed motions for entry of money judgment (Dkt. 141; Dkt. 143; and see: Dkt. 134; Dkt. 140), which were denied on February 2, 2016 (Dkt. 145). Also on February 2, 2016, the District Court entered judgment (Dkt. 146).

On February 29, 2016, Westfield filed a notice of appeal (Dkt. 149). Also on February 29, 2016, National filed a motion to alter or amend the judgment (Dkt. 147). On March 29, 2016, 200 North, MCZ and McHugh filed motions to "join" National's February 29, 2016 motion to alter or amend the judgment (Dkt. 155; 157). Westfield responded to the motion to alter or amend the judgment on March 29, 2016 (Dkt. 158). On April 18, 2016, Westfield objected to the efforts to "join" the motion to alter or amend the judgment (Dkt. 162). On May 3, 2016, the District Court entered an Order granting in part and denying in part National's motion to alter or amend the judgment (Dkt. 167). No cross-appeal has been taken from the Orders denying Defendants' motions for entry of money judgment or motion(s) to alter or amend the judgment.

### THE UNDERLYING CASE

On January 3, 2012, the Association filed a complaint in the Circuit Court of Cook County, Illinois, styled *Board of Managers of 200 North Jefferson Tower Condominium Association v. 200 Jefferson LLC, et al.*, Cause No. 12 L 480, which is ongoing as of the date

of filing hereof ("the underlying case")(Dkt. 1-1).  The Association filed a first amended

complaint on October 15, 2012 (Dkt. 1-2; Dkt. 1-3), and a second amended complaint on

February 8, 2013 (Dkt. 1-4).  The first and second amended complaints alleged that

"[t]he painting work of National Decorating on the subject project was defective in that

its exterior coating was too thin in violation of the contract documents and industry

custom and practice." (Dkt. 1-2 at 7, par. 29; Dkt. 1-4 at 7, par. 29).  No other theory of

liability has ever been articulated against National, at least as reflected in this record.

On November 4, 2014, the Association filed its third amended complaint (the

"third amended complaint") (Dkt. 54-2).  No Defendant has claimed that Westfield had

a duty to defend prior to the filing of the underlying third amended complaint (Dkt. 75

at 3, ¶s 10-12; Dkt. 86 at 4-5, ¶ 13, n. 1; Dkt. 86 at 7, ¶ 18).  The third amended complaint

alleges a breach of the implied warranty of habitability (Count I) against McHugh, 200

North, MCZ and others,[1] asserting as follows:

    a.  The project in question was new construction of a 24-story residential

          condominium building (Dkt. 54-2 at 2, ¶ 1; Dkt. 54-2 at 50-57).

    b.  The contract documents attached to the pleadings show that the

          construction project consisted of the entire building – including but not

---

[1] The third amended *Association* complaint purports to incorporate and re-plead its prior complaints, counts, and claims by reference "against those defendants dismissed pursuant to prior court orders," including National, in order to "preserve these claims for review." (Dkt. 54-2 at 9).

limited to the "drywall," the "ceilings," "acoustical tile," "carpet," "granite, ceramic, & slate flooring," "wood flooring," "vinyl base," "floor preparation," and "painting." (Doc. 1-7 at 21-23; and see: Dkt. 54-2 at 50-57).

c.   200 North was the developer and seller (Dkt. 54-2 at 6, ¶10).

d.   MCZ "identified itself as the developer…" (Dkt. 54-2 at 5, ¶ 7(a)).

e.   McHugh was the general contractor (Dkt. 54-2 at 7, ¶s 13, 15).

f.   National was the subcontractor that performed all of the painting work on the project (Dkt. 54-2 at 7, ¶ 17).

g.   "The Condominium has experienced construction defects consisting generally of: a) significant cracking of the exterior concrete walls, interior walls and ceilings and; b) significant leakage through the exterior concrete walls, balconies and windows.  The construction defects include the common elements of the Condominium.  The construction defects caused damage to the interior ceilings, floors, interior painting, drywall, and furniture in the units." (Dkt. 54-2 at 9, ¶ 22).

h.   "[McHugh] contributed to the construction defects identified in Paragraph 22 in one or more of the following ways: a) its concrete work was deficient as to: concrete mix, finishing technique, placement of plastic rebar support

-7-

chairs, and the formwork plugs; b) its caulking work was deficient as to finishing technique, coating application, inconsistent thickness, and unsealed guardrail bases; c) its window installation was deficient as to pitch of the window sill; d) its balcony installation was deficient as to membrane installation and pitch." (Dkt. 54-2 at 9, ¶ 23).

i. "The construction defects were caused by improper design, materials or workmanship." (Dkt. 54-2 at 10, ¶ 29).

j. "The construction defects rendered the property not reasonably fit for use as a residence as the structure cracked and leaked.  The construction defects caused damage to the interior ceilings, floors, interior painting, drywall, and furniture in the units." (Dkt. 54-2 at 10, ¶ 32).

k. "As a direct and proximate result of the aforesaid breach of the implied warranty of habitability, the Association has incurred the cost to investigate the construction defects, obtain bids, correct the construction defects and will incur the cost of correcting the construction defects, as well as attorney fees and the cost of filing this lawsuit." (Dkt. 54-2 at 10-11, ¶ 33).

l. "As a direct and proximate result of the aforesaid breach of the implied warranty of habitability, all unit owners in the Association were damaged

in that they were deprived of valuable common element space and amenities." (Dkt. 54-2 at 11, ¶ 34).

m. The Association's prayer for relief seeks to recover: "for the reasonable cost of investigating and correcting defective work, property damage, attorney's fees and such other relief that the court deems proper." (Dkt. 54-2 at 11).

The third amended complaint also asserts a claim for breach of contract against 200 North and others (Count II) because it "failed to design and construct the Condominium in a reasonably workmanlike manner and failed to correct the construction defects within a reasonable time after it was notified of the construction defects," and seeks "the reasonable cost of investigating and correcting defective work, attorney's fees and such other relief as the court deems proper." (Dkt. 54-2 at 12, ¶s 41-42).

Count III asserts a claim for breach of fiduciary duty against 200 North, MCZ and others because they "failed to budget, collect and set aside reasonable reserves for capital expenditures and deferred maintenance *** and failed to disclose the risks of water infiltration problems to prospective buyers." (Dkt. 54-2 at 14-15, ¶s 51-52). Count IV asserts a claim for consumer fraud against 200 North, MCZ and others because of certain "deceptive acts…done for the purpose of inducing potential purchasers of the

Condominium into purchasing said units." (Dkt. 54-2 at 16-17, ¶s 55-56, 59, 61). Count V asserts a claim against 200 North, MCZ and others for violation of the Chicago Condominium Ordinance, which requires the preparation of certain reports and prohibits the making of any false or misleading statement, because of certain "deceptive acts" and seeks to recover "the reasonable cost of investigating and correcting defective work [and] attorney's fees." (Dkt. 54-2 at 17-18, ¶s 66-67).

Although the third amended *Association* complaint filed on November 4, 2014 alleged for the first time in the case that certain construction defects resulted in damage to the "interior ceilings, floors, interior painting, drywall, and furniture in the units," the proposed third amended complaint attached to the Association's motion for leave to file on June 10, 2014 said nothing about damage to furniture or any other personal property, but rather alleged only damage to the "common elements." (Dkt. 54-1 at 23, ¶ 22; Dkt. 54-2 at 9, ¶ 22; Dkt. 1-1, 1-2, 1-3, 1-4, *passim*).

On or about January 9, 2014, McHugh filed a third-party complaint against National (the "*McHugh* third-party complaint"). The *McHugh* third-party complaint contains claims against National for breach of contract (Count I) and "express contractual defense & indemnity" (Count II) (Dkt. 1-5 through 1-8).

On March 27, 2014, after having received a copy of Westfield's complaint for declaratory judgment, McHugh filed an amended third-party complaint against

-10-

National, which contains the same two causes of action, but adds the following

allegation to each count:

> Furthermore, Plaintiff has advised McHugh that National Decorating's
> negligent performance of its work has caused damage to the work of other
> trades on the project, specifically resulting in the peeling and cracking of
> drywall.  Plaintiff has advised that the reports of its experts, which have
> not yet been produced to McHugh in this litigation, have indicated that
> damage from National Decorating's work has resulted to the property of
> Plaintiff itself and its constituent owners.  (Dkt. 28-1 at 5, 7, ¶s 12 and 19).

The amended *McHugh* third-party complaint also adds a new claim for

"negligence" against National (Count III), based on the allegation quoted above, and

the following:

> As such, the negligence of National Decorating has exposed McHugh to
> potential liability for Plaintiff's claims, which consist of the cost of
> repairing National Decorating's negligently performed work as well as the
> damage to the work of other trades on the project, including the peeling
> and cracking of drywall, as well as damage to the property of Plaintiff
> itself and its constituent unit owners.  (Dkt. 28-1 at 8, ¶ 25).

### THE WESTFIELD POLICIES

Westfield issued policy no. TRA 4 248 979 to National, effective February 28, 2008

through February 28, 2009 (Dkt. 1-9).  It was renewed three times through November 1,

2011 (Dkt. 1-10 through 1-12).[2]  The Westfield policy provisions pertinent to this appeal[3]

---

[2] Because the relevant language is the same in each policy, citations will be exclusively to the
2008-2009 policy.

[3] An Umbrella Liability coverage form on the Westfield policy also provides for a duty to
defend "property damage" claims caused by an "occurrence," and defines "property damage"
the same as in the CGL part of the policy (Dkt. 1-9 at 127, 40-41).  Because neither the

are as follows:

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY**
**DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. **\*\*\***

(Dkt. 1-9 at 36; the "Coverage Grant").

\* \* \* \* \*

    **b.**  This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage is caused by an "occurrence"…

(Dkt. 1-9 at 36; the "Occurrence Requirement").

\* \* \* \* \*

**SECTION V - DEFINITIONS**

\* \* \* \* \*

---

Defendants nor the District Court drew any distinction between the CGL and Umbrella parts, it will not be discussed further.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \* \* \*

**17.** "Property damage" means:

    a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it…

(Dkt. 1-9 at 48, 50-51).

\* \* \* \* \*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE

**SCHEDULE**

\* \* \* \* \*

ANY PERSON OR ORGANIZATION FOR WHOM YOU ARE PERFORMING OPERATIONS WHEN YOU AND SUCH PERSON OR ORGANIZATION HAVE AGREED IN WRITING ON A CONTRACT OR AGREEMENT THAT SUCH A PERSON OR ORGANIZATION BE ADDED AS AN ADDITIONAL INSURED ON YOUR POLICY.

\* \* \* \* \*

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated in the schedule of this endorsement performed for that insured and included in

-13-

the "products-completed operations hazard."

(Dkt. 1-9 at 64, "the Additional Insured Endorsement").

### EVIDENCE REGARDING THE NATURE OF THE ASSOCIATION'S CLAIMS

Laurie Pierce, the property manager for the condominium at issue, testified by deposition on behalf of the Association as its corporate representative under FRCP 30(b)(6) (Dkt. 72-2 at 2). She testified that the Association is only seeking damages in the underlying case "to repair the building and I believe attorneys fees as well." (Dkt. 72-2 at 11[38:5-10]). She confirmed that the Association identified the "total damages that [it] intends to seek at trial" in an interrogatory in the underlying case as "the reasonable cost to correct the construction defects (i.e., stop the leakage), expert investigation fees, prior repair costs, prior testing costs, [and] attorney's fees and costs." (Dkt. 72-2 at 177-78, ¶ 9; Dkt. 72-2 at 33-34 [126:5-128:21; 129:15-130:4]).

Ms. Pierce testified that the Association does not own any of the furniture in the individual units or the storage areas, nor has it made any payments to anyone to clean, repair or replace any of the furniture (Dkt. 72-2 at 5, 16 [16:13-21; 60:5-17]). The Association has no knowledge of whether any of the individuals whose furniture was damaged have filed first-party insurance claims with their own insurers (Dkt. 72-2 at 16 [59:6-13]).

The Association has informed the unit owners that it is seeking damages in the underlying suit to repair the building itself, but it has not represented to any of the

owners of the furniture mentioned in the underlying complaint that it is seeking damages to clean, repair or replace any of their damaged furniture (Dkt. 72-2 at 17, 34 [62:18-63:19; 131:1-7]).  To the best of the Association's knowledge, none of the owners of the furniture supposedly damaged in the condominium building have filed suit in any venue to recover for any such damages (Dkt. 72-2 at 5, 16 [15:17-16:3; 58:18-59:1]).

As of 2009, the Association was aware that the water infiltration at issue had caused water damage to furniture owned by unit owners (Dkt. 72-2 at 28 [107:21-108:4]).  Ms. Pierce was asked why then the reference to damage to "furniture" owned by unit owners was added for the first time to the underlying third amended complaint, filed November 9, 2014, she provided no basis for the belated addition of that allegation except "legal strategy." (Dkt. 72-2 at 27-32 [104:13-112:24; 117:14-120:17; 122:9-20]; Dkt. 1-1 at 2; Dkt. 1-2 at; Dkt. 1-4 at 2; Dkt. 54-1 at 1).

Scott Krider, the attorney who represents the Association in the underlying case, and who represented the Association in this case (before it stipulated to be bound by the District Court's judgment and was accordingly dismissed), confirmed in writing to Westfield on March 19, 2015 that he does not represent any of the "individual unit owners with regard to their damaged furniture claims." (Dkt. 72-3 at 2; Dkt. 41; Dkt. 41-1; Dkt. 54-2 at 19).  Instead, Attorney Krider explained, the Board of Managers of the Association seeks in the underlying suit only "to recover the cost to repair defectively

constructed common elements including the limited common elements such as balconies and the wall, ceiling and floor systems." (Dkt. 72-3 at 2).

## SUMMARY OF ARGUMENT

The underlying third amended complaint seeks to recover only the cost to repair and replace damage to the condominium building constructed by the Defendants. Under longstanding Illinois law, damages to the construction project *itself* are purely economic losses – the natural and ordinary consequences of defective workmanship – not covered "property damage" resulting from an "occurrence," as those terms are used in a standard CGL policy. Illinois courts find that "property damage" caused by an "occurrence" is only at issue in this context when the plaintiff sues for damage to "other property," other than the construction project itself, such as a homeowner's furniture or other personal property.

The central issue in the District Court – as framed by the parties – was whether the last-minute insertion of the allegation that "furniture" was damaged in the third amended complaint triggered the duty to defend under this theory. The insureds argued that it did, while Westfield argued that such an allegation by a condominium association – as opposed to the individuals who owned the personal property themselves – had no impact on the duty to defend.

The District Court took an entirely different approach and looked to the

Additional Insured Endorsement to the policy to expand the scope of coverage to include damage to the condominium building itself – the Defendants' own "product." That part of the policy, however, merely provides that certain entities in addition to the named insured painting subcontractor, to which the policy was issued, also qualify for coverage under the Who is Insured clause in Section II of the policy – like the general contractor and the developer of the construction project. Westfield never disputed that all the Defendants besides National qualified as additional insureds on its policy, at least with respect to the duty to defend (Dkt. 126 at 6; A.7).

The Additional Insured Endorsement provides a limited form of coverage to these additional entities. The manner in which coverage is narrowed for the additional insureds is not at issue for purposes of the duty to defend, but the Additional Insured Endorsement to the policy clearly does not in any way *expand* the scope of coverage afforded under policy, as the District Court mistakenly held. This endorsement, moreover, does not even purport to have any impact on the coverage afforded the *named* insured. The District Court's rationale will be addressed in Section III of this Brief following a discussion of the issues as pled and briefed by the parties.

Defendants' attempts to trigger coverage by invoking the purported incidental damage to furniture owned by condominium unit owners in order to portray the underlying suit as one for damage to "third-party personal property" – outside the

-17-

scope of the construction project – is deficient on its face. The only plaintiff in the underlying case is the condominium association, which has no standing to bring any such personal property claims on behalf of its unit owners under Illinois statutory law, and in fact does not even purport to bring such claims. The Illinois statute which authorizes condominium associations to act in a representative capacity does not imbue them with the authority to prosecute lawsuits based upon claims for damage to personal property owned by their unit owners, or anyone else.

According to the clear allegations of the pleadings, the undisputed facts, and the straightforward application of Illinois statutory law, there is no property damage claim at issue in the underlying case – other than for damage to the new-construction condominium building – which is the insureds' own "product." According to decades of consistent Illinois case law, and several of this Court's own prior decisions, that is precisely what is *not* covered, as a matter of law, under the kind of insurance policy which Westfield issued here.

On that basis, the District Court should have denied the Defendants' motions for summary judgment and instead granted Westfield's motion for summary judgment, finding that Westfield has no duty to defend or indemnify the Defendants in the underlying construction defect case. This Court should reverse and enter judgment in favor of Westfield accordingly.

-18-

S<small>TANDARD</small>

As this is an appeal from a ruling on cross-motions for summary judgment, this Court applies the *de novo* standard of review. *Gazarkiewicz v. Town of Kingsford Heights, Indiana*, 359 F.3d 933, 939 (7th Cir. 2004).   Under Illinois law, the interpretation of an insurance policy presents a question of law, subject to *de novo* review. *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 751 (Ill. 2009).   Under Illinois law, as the party seeking coverage, the insured bears the burden of proof in establishing coverage.  *Fay*, 905 N.E.2d at 752.

**ARGUMENT**

**I.     T<small>HERE IS NO</small> C<small>OVERAGE FOR</small> D<small>AMAGE TO THE</small> C<small>ONDOMINIUM</small> B<small>UILDING</small> I<small>TSELF.</small>**

The purpose of a CGL policy is "to protect the insured from liability for injury or damage to the persons or property of others; they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses." *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 489 (Ill. 2001).   As this Court recently observed, "several Illinois cases have held that 'damages that are the natural and ordinary consequences of faulty workmanship do not constitute an 'occurrence' or 'accident,'" and are thus not covered under standard CGL provisions such as those at issue here. *Nautilus Ins. Co. v. Board of Directors of Regal Lofts Condominium Ass'n*, 764 F.3d 726, 731-32 (7th Cir. 2014).   "Illinois courts require that for an incident to constitute an 'occurrence' or 'accident' in the building construction

-19-

context, 'there must be damage to *something other than the structure, i.e., the building,* in order for coverage to exist.'" *Id.* (emphasis added); *Lagestee-Mulder, Inc. v. Consolidated Ins. Co.,* 682 F.3d 1054, 1057 (7th Cir. 2012) (holding that the rule in Illinois is "settled" that "[w]here the underlying suit alleges damage to the construction project *itself* because of a construction defect, there is no coverage," instead, "there must be damage to something other than the structure, i.e., the building…,"emphasis in original); *Lyerla v. AMCO Ins. Co.,* 536 F.3d 684, 689 (7th Cir. 2008) (any "damage to a construction project resulting from construction defects is not an 'accident' or 'occurrence' because it represents the natural and ordinary consequence of faulty construction").

The underlying case involves a variety of alleged structural defects, but National's part was apparently limited to applying its paint "too thin." (Dkt. 1-2 at 7, par. 29; Dkt. 1-4 at 7, par. 29). There is no dispute that any coverage for the other Defendants is derivative of that liability. Whatever else the failure to apply enough coats of paint may be, it surely is not an "accident." *Indiana Ins. Co. v. Hydra Corp.,* 615 N.E.2d 70, 73 (Ill.App. 1993) (allegations of "loose paint on the exterior of the building" failed to trigger the duty to defend under a CGL policy, as this did not amount to an allegation of an "occurrence," or "accident").

The Defendants all generally agreed in the District Court that construction defect damages that are the natural and ordinary consequences of faulty workmanship do not

constitute "property damage" caused by an "occurrence," and themselves acknowledged numerous controlling and persuasive decisions which hold that there must be damage to something other than the "building itself" or the construction "project itself," in order for coverage to exist. (Dkt. 84 at 4-7; Dkt. 85 at 2-5; Dkt. 91 at 4-12).[4]  How the District Court could have reached a contrary result is perplexing.  As argued below, the underlying complaint here fails to allege any "property damage" caused by an "occurrence" (defined, in relevant part, as an "accident"), because the plaintiff condominium association indisputably seeks recovery only for damage to the condominium building itself.

## II.     THERE IS NO DAMAGE TO "OTHER PROPERTY" AT ISSUE IN THE UNDERLYING SUIT.

Undoubtedly aware of the well-developed body of Illinois law discussed above, Defendants focused their argument in the District Court on the proposition that the underlying third amended *Association* complaint does, in fact, allege damage *beyond* the building itself, pointing to allegations of water damage to the interiors of the units and furniture contained therein owned by unit owners.

---

[4]  See also: Robert J. Franco and Christopher M. Cano, 24 Illinois Practice, ILLINOIS CONSTRUCTION LAW MANUAL §12:4 (2016 ed.) ("Simply, general liability policies are intended to provide coverage for injury or damage to persons or property of others; they are not intended to pay costs associated with repairing or replacing an insured's defective work and products. Such losses are purely economic losses that are generally not covered by general liability insurance.*** [T]he natural results of negligent and unworkmanlike construction of a building do not constitute an 'occurrence,'" citing *Viking Const. Management, Inc. v. Liberty Mut. Ins. Co.*, 831 N.E.2d 1 (Ill.App. 2005); *Acuity v. Lenny Szarek, Inc.*, 13 C 7505, 2015 WL 5163195

The Association was aware of these damages since 2009 (Dkt. 72-2 at 28 [107:21-108:4]).  From the date the underlying case was filed on January 3, 2012 until November 4, 2014, each version of the underlying complaint was silent regarding any damage to anything besides the common elements (Dkt. 1-1; 1-2; 1-3; 1-4; 54-1).  On November 4, 2014, the Association filed the third amended complaint, which references, for the first time, water damage to interiors and furniture owned by unit owners (Dkt. 54-2 at 2-11; Dkt. 72-2 at 27-32[104:13-112:24; 117:14-120:17; 122:9-20]; Dkt. 1-1 at 2; Dkt. 1-2 at; Dkt. 1-4 at 2; Dkt. 54-1 at 1).  This allegation was inserted *after* the trial court in the underlying case granted leave to file a proposed complaint which did not contain the "furniture" allegation, and *after* Westfield spelled out its position in this case that damage to the building itself was beyond the scope of coverage (Dkt. 1; Dkt. 52-2).  It is undisputed that counsel for the insureds had a discussion regarding the significance of this issue with underlying plaintiff's counsel shortly before the "furniture" allegations first appeared (Dkt. 28-1 at 5-7, pars. 12, 19).  None of the insureds in this case ever argued that any version of the underlying complaint prior to the November 4, 2014 third-amended complaint triggered Westfield's duty to defend, presumably for this very reason.

For the Association – the only plaintiff in the underlying case – to raise these

---

(N.D.Ill. Sept. 2, 2015); *American Fire & Cas. Co. v. Broeren Russo Const., Inc.*, 54 F.Supp.2d 842, 847 (C.D.Ill. 1999)).

alleged injuries has no effect on the duty to defend, because it does not even purport to have standing to raise personal property damage claims on behalf of its owners, and it plainly does not have standing, as a matter of law. Its mention of damage to personal property owned by non-parties – the unit owners individually – is a *non-sequitur*.

### A.     Damage to Walls, Ceilings and Floors is Damage to the "Project Itself."

Defendants argued in the District Court that there was coverage for "property damage to the interior ceilings and floors of the units," and "the peeling and cracking of drywall." (Doc. 29 at 8; Doc. 32 at 1; Dkt. 69 at 6-12; Dkt. 74 at 9, 11-12).[5]  This argument fails to establish that the underlying case claims damages for "something other than the structure, i.e., the building…"

The Defendants apparently reason that since the interior finishes of a residence might be added after the building is completed for occupancy, this makes such property something other than "the building itself." That argument was explicitly rejected in *CMK Development Corp. v. West Bend Mut. Ins. Co.*, 917 N.E.2d 1155 (Ill.App. 2009).  In that case, the plaintiff homeowners' claims included damage to "interior finish work," including "scratches to the toilet bowl and tub" and "water damage to a cork floor." 917

---

[5] McHugh went so far as to argue that its *own* allegations in its third-party complaint in the underlying case that National caused "damage to the work of other trades on the project, specifically resulting in the peeling and cracking of drywall," triggered Westfield's coverage for McHugh (Doc. 29 at 8).  Illinois law is well-established that the Court must "decline[] to review a third-party complaint when it was issued by the party who was seeking [coverage]," because it would "only serve[] as self-serving statements which would offer nothing that could

N.E.2d at 1159-60. The Court "reject[ed] the developer's arguments that these…defects potentially qualified as damage to other property." 917 N.E.2d at 1163.

The insured argued that "the scratches to the toilet bowl and tub could have happened after the closing; and since, after the closing, the property then belonged to the purchasers, who are 'others,' the policy thus covered these post-closing defects." 917 N.E.2d at 1163. Further, the developer argued that "the cork floor may have been installed by the purchasers themselves, rather than by the developers, so that damage to it qualified as damage to the property of others, i.e. the purchasers." 917 N.E.2d at 1163, 1167.

The *CMK* Court summarized Illinois law as standing for the proposition that only "construction defects that damage something other than the project itself will constitute an 'occurrence' under a CGL policy." 917 N.E.2d at 1164. "[T]here must be damage to something other than the structure, i.e., the building, in order for coverage to exist." 917 N.E.2d at 1165 (citations deleted). "[T]he underlying complaint must allege 'negligent workmanship that resulted in damage to something other than the structure worked upon.'" *Id*. (citations deleted).

The Court held that "the case law does not provide coverage for damage to the structure itself, and the tub and toilet bowl were part of the structure that the developer

---

not have been provided in the declaratory judgment action." *Illinois Emcasco Ins. Co. v. Waukegan Steel Sales, Inc.*, 996 N.E.2d 247, 254 (Ill.App. 2013).

promised to deliver." 917 N.E.2d at 1166. "While we must, and do," it explained, "resolve any doubts in favor of coverage, there is nothing in this statement [in the underlying complaint] to raise a doubt." *Id*.

In *Donven Homes, Inc. v. Amerisure Ins. Co.*, 2012 IL App (1st) 102790 (Ill.App. 2012), the developer of a housing subdivision was an additional insured on a carpentry subcontractor's CGL policy. Four sets of homeowners sued the developer for claims based upon the installation of the windows and roofs, the foundations, and the decks in their homes. *Id*. at ¶ 8. The Court held that the insurer had no duty to defend or indemnify, reasoning that "[w]here the damages are the natural and ordinary consequence of improper construction methods, defective construction claims do not fall within the coverage of CGL policies." *Id*. at ¶ 23. "[T]here must be damage to something other than the structure, i.e., the building, in order for coverage to exist." *Id*. at ¶ 33, quoting *CMK*, 917 N.E.2d at 1164. "Since the underlying complaints in this case did not allege damage to or loss of use of any property other than the houses themselves, the underlying complaints did not allege property damage caused by an occurrence." *Id*.; see also: *Monticello Ins. Co. v. Wil-Freds Const., Inc.*, 661 N.E.2d 451, 452 (Ill.App. 1996) (no duty to defend claim for damage to "walls," "water damage to the lobby of the office building," "interior water damage," or "cracked terrazzo floors and stairwells"); *Indiana Ins. Co. v. Hydra Corp.*, 615 N.E.2d 70, 73 (Ill.App. 1993) (no duty to

defend allegations of "cracks in the floor and the loose paint on the exterior of the building"); *Nautilus Ins. Co. v. JDL Development, IX, LLC*, No. 10 C 3435, 2012 WL 1156917, *2-4 (N.D.Ill. Apr. 4, 2012) (water infiltration to condominium building caused by construction defects, including "damage to the interior of [a] unit" and "damage to the windows and doors of the building as well as damage to the terraces, individual unit's wood flooring and door sills," was not "property damage" caused by an "occurrence," because such damage "constitutes damage to the structure"); *QBE Ins. Corp. v. Barrier Corp.*, Cause No. 11 CH 9383, 2012 WL 6900226, *8-9 (Ill.Cir.Ct. Nov. 19, 2012) (no duty to defend or indemnify subcontractor for construction defect damage to condominium, including damage to the "interior finishings of the units," reasoning that the "underlying complaint does not allege damage to something other than the structure or Project itself").

"Interior finish work" constitutes "part of the structure" because it is "affixed to the land," thus, it is "to be considered as part of the land unless the circumstances are such as to show that the article was intended all along to continue as chattel, the onus…lying on those who contend that it is a chattel." *Crane Erectors and Riggers, Inc. v. LaSalle Nat. Bank*, 466 N.E.2d 397, 401 (Ill.App. 1984), quoting *Owings v. Estes*, 100 N.E. 205, 205-07 (Ill. 1912) (holding that "certain showcases, showracks, and other articles which were attached to the interior of said building," which were "nailed to the ceiling

and floor" and "surrounded at the bottom by a quarter round molding, which held them snugly to the floor," and which could not "be removed from the room, except by being taken apart," were not personalty, but rather part of the realty).

In *CMK*, as in this case, "[w]ithout case law or policy reasons, the developer asks us to expand the definitions of 'other property' to include construction defects in a new home." 917 N.E.2d at 1168.  Defendants in this case seek to draw an artificial line between the inside of the condominium building at issue and the outside.  The *CMK* Court described this as a "clever argument[]" designed to "circumvent" the plain line drawn by Illinois law in this regard. 917 N.E.2d at 1166.  Since damage to the building itself is not covered, the Court should find that such allegations do not trigger Westfield's duty to defend. [6]

**B.     Damage to the "Work of Other Trades" is also Damage to the "Project Itself."**

Based on the premise that it was not responsible for construction of the entire building, unlike the other Defendants, but rather only for specific work, National urged the District Court to draw a distinction between the construction project as a whole and "damage to the work of other trades on the project, specifically resulting in the peeling and cracking of drywall," for purposes of determining Westfield's duty to defend it against McHugh's third-party complaint (Dkt. 32 at 5, 9). Several courts applying

Illinois law have held that such claims are not covered.[7] *Viking Const. Management, Inc. v. Liberty Mut. Ins. Co.*, 831 N.E.2d 1, 16 (Ill.App. 2005) (holding no possibility of coverage for subcontractor causing damage to construction project, reasoning that "[e]ven if we found that Woodland alleged damages to other parts of the building [beyond the scope of its own work], the cases discussed above make it clear that there must be damage to something other than the structure, i.e., the building, in order for coverage to exist"); *Hartford Acc. & Indem. Co. v. Case Foundation Co.*, 294 N.E.2d 7, 15 (Ill.App. 1973) (CGL insurer had no duty to defend or indemnify architect, general contractor or subcontractor against construction defect claims arising out of construction of John Hancock building, but rather "provided coverage only for injury to or destruction of some other property," and that the same reasoning "applied to all of the three [insured] defendants").[8]

---

[6] Indeed, McHugh acknowledged that all authority on point as to this issue supports Westfield's position (Dkt. 84 at 6-7).

[7] Because National was dismissed prior to the filing of the underlying third amended complaint, and the "allegations" against it therein were lodged merely to "preserve these claims for review," there could never be any duty to "defend" National against the Association's claims (Dkt. 54-2 at 9). *Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014).

[8] See also: *Paradise Inground Pools, Inc. v. Black Diamond Plumbing and Mech., Inc.*, 2012 IL App (2d) 110819-U, ¶s 2-3, 6-7, 13-14 (Ill.App.2012); *American Fire & Cas. Co. v. Broeren Russo Constr., Inc.*, 54 F.Supp.2d 842, 844-49 (C.D.Ill. 1999); *Hartford Fire Ins. Co. v. Flex Membrane Int'l, Inc.*, No. 00 C 5765, 2001 WL 869623, *2 (N.D.Ill. Aug. 1, 2001); *Hartford Cas. Ins. Co. v. Construction Builders in Motion, Inc.*, 966 F.Supp.2d 777, 787-90 (N.D.Ill. 2013); *QBE Ins. Corp. v. Barrier Corp.*, No. 11 CH 9383, 2012 WL 6900226, *3-4, 8-9 (Cir.Ct. Cook Co., IL Nov. 19, 2012); *American Family Mut. Ins. Co. v. Hummel Development Group, LLC*, No. 11 CH 24601, 2013 WL 6631068, *4-5 (Cir.Ct. Cook Co., IL Nov. 21, 2013).

Plainly, the various contractors working on a single building under construction do not stand in relation to one another as mere third-party strangers, but as participants in a common endeavor. They are each in a contractual relationship with the owner or general contractor, which provides for the coordination of their work with the goal of creating a single, integrated product for sale. From the end-user's perspective, the condominium building is a single product emanating from a single transaction, not thousands of disparate transactions for lumber, tile, drywall, steel, paint and so on. From the purchaser's perspective, the product simply injured *itself* in this case, and that is exactly what is not covered by a CGL policy. The fact that some of the damage may have been to parts of the building not within the scope of National's work is irrelevant.

This same issue has been settled in the tort context by the Illinois Supreme Court, where it is established that damage to one component of the defendant's product by another component of the same product is mere "economic loss," subject to recovery only in contract, and categorically not subject to recovery in tort. *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 449 (Ill. 1982). Just as in the insurance coverage context, attempts have been made to circumvent this bright-line rule by dividing "the product" up into numerous individual "sub-products," each of which is then alleged to have harmed the other.

These efforts to draw arbitrary boundaries for the purpose of creating liability

where none would otherwise exist were put to rest in *Trans State Airlines v. Pratt & Whitney Canada, Inc.*, 682 N.E.2d 45 (Ill. 1997). In that case, an airplane engine caught fire, damaging both the engine and the airframe to which it was affixed. The owner attempted to recover in tort for the damage to both.

The Illinois Supreme Court framed the issue as "whether there can be tort recovery when the damage caused by a defective product is confined to the product itself." 682 N.E.2d at 48. It held that there may not. 682 N.E.2d at 54-55. "A commercial product's damaging itself…is not the kind of harm that public policy requires manufacturers to protect against without contractual obligation." 682 N.E.2d at 50. "Damage to a product itself is most naturally understood as a warranty claim." *Id.* "Such damage means simply that the product has not met the customer's expectations or, in other words, that the customer has received 'insufficient product value.'" *Id.*, quoting, in part, *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872 (1986). "Damage to the product itself only means that the product has not met the customer's expectations, or that the customer did not receive the benefit of his bargain." 682 N.E.2d at 52.

It explained that if the plaintiff's argument that the engine and airframe were separate "products…then practically every component of every product would be considered a separate product." 682 N.E.2d at 56. "The relevant inquiry" in making the

"separate product" determination, held the Court, is "[w]hat is the object of the contract or bargain that governs the rights of the parties?" 682 N.E.2d at 58. Since the contract at issue defined the product which was bargained for was a complete aircraft, with engines attached, the plaintiff "has lost no more than it bargained for in the sublease agreement." *Id*. "Therefore," the Court held, "damage to the airframe caused by the defective engine constitutes damage to a single product." 682 N.E.2d at 58.

The Illinois Appellate Court applied that principle in the building construction context in *Mars, Inc. v. Heritage Builders of Effingham*, 763 N.E.2d 428 (Ill.App. 2002), where the owner of a warehouse under construction sued the contractor which erected a steel frame for the warehouse which collapsed in a thunderstorm. 763 N.E.2d at 431-32. The *Mars* court held that in order to be recoverable in tort, the damage at issue cannot be to the product or construction itself, but must be damage to "other property." 763 N.E.2d at 435-37. The claim at issue was based only on the damage to the construction project itself. *Id*. Plaintiff argued that the contractor's "product" (the contracted work) was only the assembly of the frame and, because the steel was supplied by another, the completed frame was "other property." 763 N.E.2d at 437. Finding that argument "unavailing," the court determined that "the critical fact of the inquiry [was] whether the damaged property was part of an integrated system, such that the damaged property could not be separated from the 'product.'" *Id*.

The court reasoned that the plaintiff bargained for a completed warehouse and that the frame was to become part of an integrated warehouse. 763 N.E.2d at 438. When the frame collapsed, explained the Court, "no interest other than business expectancy was damaged." *Id.* The product at issue in the transaction simply damaged itself, and that was "a matter squarely within the realm of the parties' bargain." *Id.*

In *Redarowicz v. Ohlendorf*, 441 N.E.2d 324 (Ill. 1982), a homeowner brought a construction negligence claim alleging that the defendant homebuilder had negligently constructed the home's chimney, one of its walls, and its patio. 441 N.E.2d at 326-27. The homeowner claimed damages for inadequate value and for the costs to repair and replace these items. *Id.* The Illinois Supreme Court held that the economic loss doctrine barred such damages under a negligence theory, implicitly reasoning that the various components of the home were not each separate "products":

> This is not a case where defective construction created a hazard that resulted in a member of the plaintiff's family being struck by a falling brick from the chimney. The adjoining wall has not collapsed on and destroyed the plaintiff's living room furniture. The plaintiff is seeking damages for the costs of replacement and repair of the defective chimney, adjoining wall and patio. While the commercial expectations of this buyer have not been met by the builder, the only danger to the plaintiff is that he would be forced to incur additional expenses for living conditions that were less than what was bargained for. The complained-of economic losses are not recoverable under a negligence theory.

*Redarowicz*, 441 N.E.2d at 327.

This principle is likewise applicable in the condominium setting. In *2314 Lincoln*

*Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 555 N.E.2d 346 (Ill. 1990), the plaintiff sought damages from several contractors for defects in the construction of a condominium building and consequent damages. The Illinois Supreme Court found that such construction defect damages to the building itself were inherently economic in nature. 555 N.E.2d at 309-13; see also: *1324 W. Pratt Condo. Ass'n v. Platt Constr. Group*, 936 N.E.2d 1093, 1099 (Ill.App. 2010) (holding that "damages for repair of the building and the individual units as well as associated costs" were "economic in nature" and thus barred by the economic loss doctrine).

In *Ohio Cas. Ins. Co. v. Bazzi Constr. Co.*, 815 F.2d 1146 (7th Cir. 1987), by way of contrast, the construction project at issue was a renovation of an existing structure. The negligence of the insured contractor in that case caused physical injury to a pre-existing building. 815 F.2d at 1148. This Court quite appropriately held that these particular allegations triggered a duty to defend under the CGL policy at issue because the underlying complaint "alleges damage to the structure of a building already in existence." *Id*. "Had [the insured] contracted to construct an entirely new building," this Court clarified, "any damage to or defects in that building…would not be covered under the policy." *Id*. That describes this case perfectly. The underlying complaint here is clear that the condominium building was all new construction; thus, the conclusion that the product at issue simply damaged itself is inescapable (Dkt. 54-2 at 2, ¶ 1).

Therefore, the Court should hold that there is no duty to defend or indemnify National for damaging parts of the construction project, simply because the damage lies outside National's scope of work.

### C.     The Association Does Not Seek to Recover, and Could Not Even in Principle Recover, for Damage to the Unit Owner's Personal Property.

Defendants argued in the District Court that the Board of Managers of the Association – the only plaintiff in the underlying suit – has brought a claim in the underlying third amended complaint for damage to personal property owned by certain unit owners (Dkt. 69 at 6-12; Dkt. 74 at 9, 11-12).  They relied primarily on a prior state court case, where a homeowner who sued for water damage not only to his home, but also for "damage to furniture, clothing, and antiques," was held to trigger the duty to defend on that narrow basis. *Pekin Ins. Co. v. Richard Marker Assoc., Inc.*, 682 N.E.2d 362, 366 (Ill.App. 1997) (Dkt. 69 at 8; Dkt. 74 at 11).

But in that case, the homeowner owned *both* the damaged structure *and* the personal property located within, and sued for both.  Here, in contrast to *Richard Marker*, it is undisputed that the owners of the personal property mentioned in the complaint have chosen not to sue for the purported damage to their furniture, at least not in the underlying case at issue here.

The fact that the Association's underlying third amended complaint mentions damage to "furniture" owned by non-parties does not place that damage *at issue* in the

underlying case and thus does not trigger Westfield's duty to defend.  This distinction is

critical, because "factual allegations are *only* important insofar as they point to a theory

of recovery." *Health Care Industry Liability Ins. Program v. Momence Meadows Nursing

Center, Inc.*, 566 F.3d 689, 696 (7th Cir. 2009) (emphasis added).  A description of covered

damage in the underlying complaint is irrelevant to the duty to defend if the underlying

plaintiff does not actually *seek* recovery for such damage.  As this Court has put it, "a

consequence is not a claim." *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Mead Johnson

& Co. LLC*, 735 F.3d 539, 548 (7th Cir. 2013).

The unit owners are responsible for their *own* personal property, and there is no

rationale for collective representation in that regard.  The statute which provides the

sole basis for the Association's claim here limits its right of recovery for any property

damage to the condominium building itself, whether to the common elements or to

multiple individual units.  There is absolutely no authority – in Illinois or elsewhere –

for the proposition that a condominium association has representative standing to seek

recovery for damage to the personal property of unit owners.

### 1.    The Condominium Association Never Sought any Damages for Injury to Personal Property of its Unit Owners in its Complaint.

It is irrelevant to the determination of the duty to defend that a covered injury

took place, if that injury is not the basis for the lawsuit that the insurer supposedly has a

duty to defend.  After all, the party who actually does hold a claim for damage to

personal property may file suit in some other forum, at some other time. The parties should not have to litigate coverage for such a hypothetical claim prior to its actual assertion.

"In several cases, Illinois courts have expressed concern that certain claims, especially if they are conclusory and boilerplate, may have been purposefully inserted into the complaint in order to trigger insurance coverage, thereby increasing the chance of a higher recovery for the plaintiff in the underlying lawsuit." *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Absolute Title Services, Inc.*, No. 09 C 4165, 2011 WL 4905660, *2 (N.D.Ill. Oct. 13, 2011). The Court should not base a duty to defend on an allegation which "lacks any factual support that would make the claim plausible." *Lemko Corp. v. Fed. Ins. Co.*, 12 C 03283, 2014 WL 4924403, *6 (N.D.Ill. Sept. 30, 2014). Such a suspect assertion "is insufficient to trigger a duty to defend" where it is "'inconsistent with the larger complaint…" *Id.*

Under Illinois law, the Court does not accept conclusory characterizations uncritically, but rather performs its own "textual exegesis," or critical examination, of the underlying complaint to determine the duty to defend. *SCR Medical Transp. Services, Inc. v. Browne*, 781 N.E.2d 564, 569 (Ill.App. 2002). The Court's task is not limited to simply scanning the underlying complaint to determine whether the phrase "personal property" appears. It must go further to determine whether any such allegations are

-36-

"directed to a theory of recovery." *Health Care Industry Liability Ins. Program v. Momence Meadows Nursing Center, Inc.*, 566 F.3d 689, 696 (7th Cir. 2009).

The Court should recognize a "transparent attempt to trigger insurance coverage" for what it is: a "device without substance." *Farmers Auto. Ins. Ass'n v. Danner*, 967 N.E.2d 836, 844 (Ill.App. 2012). This is particularly so where, as here, the attempt comes *after* the insurer spells out its reasons for denying coverage in a declaratory judgment action, and the underlying plaintiff attempts to cleverly steer around these arguments. See: *SCR Medical Transp. Services*, 781 N.E.2d at 568 (finding no duty to defend although "Count IX was rushed into the breach when it became obvious the first eight counts of Browne's complaint would not support a duty to defend").

In any event, where the underlying plaintiff does not actually purport to assert a claim for the suspect damages, such allegations are simply disregarded for determining the duty to defend. In *Momence Meadows*, for example, the underlying suit was brought under the False Claims Act, based upon fraudulent Medicare claims. 566 F.3d at 691. The complaint also included allegations that residents in the defendant's nursing home had sustained bodily injuries as a result of its negligence. *Id*. The nursing home's insurance policy covered claims for "bodily injury," but not the kind of economic loss at issue under the False Claims Act. 566 F.3d at 692 n. 2. The Court held that the insurer had no duty to defend, explaining that "[a]lthough the allegations in the underlying

complaint detailing the injuries suffered by Momence residents put a human touch on the otherwise administrative act of false billing, they need not be proven by the plaintiffs to prevail." 566 F.3d at 694-95.

In *Medmarc Cas. Ins. Co. v. Avent America, Inc.*, 612 F.3d 607 (7th Cir. 2010), the insured manufacturer was sued by consumers who bought its products and then learned that they contained an allegedly dangerous chemical. 612 F.3d at 609. This Court held that there was no duty to defend under the "bodily injury" coverage, reasoning that "[p]roving such allegations would not entitle the plaintiffs to recover for bodily injury or for damages flowing from bodily injury because these allegations lack the essential element of actual physical harm to the plaintiffs." 612 F.3d at 614-15. Instead, these references to "physical harm only explain and support the claims of the actual harm complained of: the economic loss to the purchasers of the products..." 612 F.3d at 617.

This Court employed the same logic in *Great Lakes Dredge & Dock Co. v. City of Chicago*, 260 F.3d 789, 795 (7th Cir. 2001). There, the insured carried $101 million in coverage one year, and $51 million the next year. 260 F.3d at 791. It caused cracks in certain tunnels beneath the Chicago River during the first policy period, which eventually led to extensive flooding in the Chicago Loop during the subsequent policy period, causing widespread damage to businesses. *Id*.

The insured sought coverage under the first period policies for the much more extensive damage which occurred during the second period. *Id.* The Court rejected this ploy, noting that none of the businesses were damaged at all during the first period, only the City of Chicago itself, reasoning that "an occurrence policy is not triggered unless loss *to the claimant* happened while that policy was in force." 260 F.3d at 795 (emphasis in original).

Precisely this same reasoning was recently applied by the Illinois Appellate Court in a condominium construction defect coverage case essentially identical to this one. *Westfield Ins. Co. v. West Van Buren, LLC*, ___N.E.2d___, 2016 IL App (1st) 140862 (Ill.App. 2016). In *West Van Buren*, Westfield was asked to defend another construction defect case based on a new-construction condominium complex. There, as here, the insureds argued that their shoddy workmanship triggered Westfield's duty to defend, because it caused damage to personal property owned by condominium unit owners inside the units.

The Illinois Appellate Court held that Westfield had no duty to defend or indemnify the insureds, reasoning that claims of shoddy workmanship did not amount to an "accident," and thus did not meet the "caused by an 'occurrence'" requirement for coverage. *Id.* at ¶ 18. Such allegations "likewise do not fall within the definition of property damage under the policy's plain language." *Id.*

As for the argument that the unit owners suffered damage to their personal property, the Appellate Court explained that "these allegations were meant to simply bolster the contention that water infiltration generally occurred and caused damages," but that "[t]he individual condo unit owners themselves were not parties to the complaint, and the Condo Association did not purport to act on behalf of any individual condo unit owners," thus "the complaint did not seek damages for any personal property damage." *Id*. at ¶ 20, citing 765 ILCS §605/9.1(b).

The underlying condominium association's "allegations of personal property damage were not offered for the purposes of recovery," but instead were "purely tangential to the Condo Association's claim for damages for repair and remediation of the roof." *Id*. at ¶ 22.  "[E]ven if the Condo Association sought to recover amounts attributed to property damage sustained by individual unit owners, such amounts, *vis-a-vis* the Condo Association, are economic losses and not property damage." *Id*. (footnote omitted).  "As a result, the trial court properly disregarded these allegations in determining Westfield Insurance's duty to defend." *Id*. On identical facts, claims and policy language, this Court should reach the same result.

Another Illinois decision in the construction defect context on point is *Monticello Ins. Co. v. Wil-Freds Const., Inc.*, 661 N.E.2d 451 (Ill.App. 1996).  In that case, the underlying complaint alleged a multitude of defects in the construction of a building

and adjoining parking garage, including water infiltration. 661 N.E.2d at 452. These defects "[were] the natural and ordinary consequences of the improper construction techniques of [the insured] and its subcontractors and, thus, [did] not constitute an occurrence within the definition in the CGL policy," but instead only "defective construction of a building which resulted in damage to the building itself." 661 N.E.2d at 455-56.

The insured in *Wil-Freds* relied on deposition testimony to the effect "that some cars in the parking garage were damaged by leaking water." 661 N.E.2d at 458. The Court rejected this attempt to officiously interject third-party property damage into the case, reasoning that "the unmistakable implication of [this] testimony is that [the underlying plaintiff] had chosen not to seek recovery from [the insured] for this damage," but rather "seeks recovery only for damage to the project itself, not for damage to the cars in the garage." *Id*.

The same logic was again employed in *Crawford Laboratories, Inc. v. St. Paul Ins. Co. of Illinois*, 715 N.E.2d 653 (Ill.App. 1999). In that case, a paint manufacturer was sued by a citizens group for failure to comply with a statute mandating certain warnings on toxic chemicals. The Court held there was no duty to defend under the "bodily injury" coverage of a CGL policy, reasoning that the statute "does not afford a remedy for bodily injury," so the plaintiff "could not have been seeking damages for bodily injury."

715 N.E.2d at 657.[9]

If indeed some of the unit owners here suffered damage to their furniture, they evidently chose not to sue for it, at least not in the underlying case at issue here. The identity of the underlying plaintiff is a critical element in determining what claims are at issue, an element which the Defendants would have this Court ignore.

> **2.     The Condominium Association Does Not Even Arguably Have Legal Standing to Seek Damages for Injury to the Personal Property of its Unit Owners.**

Defendants emphasized to the District Court that the Association in the underlying suit seeks "all damages to which it is entitled under the applicable law." (Dkt. 69 at 9; Dkt. 75 at 4, par. 17). The Association, however, has a right to represent its unit owners only as prescribed by statute. 765 ILCS §605/9.1(b). There is no provision for a condominium association to make any claim on behalf of anyone for damage to their personal property, but rather only for the building itself and the units contained

---

[9] See also: *Diamond State Ins. Co. v. Chester-Jensen Co., Inc.*, 611 N.E.2d 1083, 1087-88 (Ill.App. 1993) (no duty to defend contractor who installed air conditioning system under "bodily injury" coverage against allegations that the product failed to adequately cool the building, causing plaintiff building owner "lost work days from…employees who became ill and had to go either to a hospital or home because of the heat," reasoning that the plaintiff "is not bringing this action on behalf of its employees, seeking recovery for damages sustained by them on account of their illness or other bodily injury"); *ISMIE Mut. Ins. Co. v. Michaelis Jackson & Assoc., Inc.*, 921 N.E.2d 1156 (Ill.App. 2009) (same holding as *Medmarc*); *Bituminous Casualty Corp. v. Gust K. Newberg Construction Co.*, 578 N.E.2d 1003, 1008 (Ill.App. 1991) (based on the same occurrence as *Chester-Jensen*, holding that the "State's complaint alleges physical injury to State employees in that some had to be taken to the hospital, but we find these allegations are made, not for recovery for the injured employees, but are offered as evidence of the problems that resulted from the defective HVAC system").

therein. *Westfield Ins. Co. v. West Van Buren, LLC*, ___N.E.2d___, 2016 IL App (1st) 140862), ¶s 20-22 (Ill.App. 2016); *Poulet v. H.F.O., L.L.C.*, 817 N.E.2d 1054, 1064-65 (Ill.App. 2004) (a "faulty roof may result in personal property damage in the unit," but the statute in no way affects "[t]he unit owner's right to maintain an action for compensation for that loss," as distinguished from a claim for "damage to the common element").[10]

Therefore, the mere reference to damage to personal property of unit owners in an underlying complaint does not constitute an actual claim, and thus does not trigger the duty to defend under a CGL policy. *West Van Buren*, ¶s 18-26.[11]  Here, as in *Medmarc*, it is undeniable from the plain allegations of the underlying complaint that these assertions of damage to personal property "lack the essential element of actual physical harm to the plaintiff[]." 612 F.3d at 615.

It is completely irrelevant to the determination of the duty to defend that the unit owners *could* have recovered for damage to their personal property on the same set of

---

[10] See also: *Crescent Pk. Tenants Assoc. v. Realty Eq. Corp. of N.Y.*, 275 A.2d 433, 438-39 (N.J. 1971) (scope of condominium association's representation did "not include any individual grievance which might perhaps be dealt with more appropriately in a proceeding between the individual tenant and the landlord").

[11] See also: Robert J. Franco and Christopher M. Cano, 24 Illinois Practice, ILLINOIS CONSTRUCTION LAW MANUAL §12:3 (2016 ed.) ("Illinois courts will not impose a duty to defend where the underlying facts might potentially bring the claim within coverage in some hypothetical version of the proceeding, but not the underlying proceeding as actually instituted," citing *Acuity v. Lenny Szarek, Inc.*, 13 C 7505, 2015 WL 5163195, *5 (N.D.Ill. Sept. 2, 2015); and see: *Westfield Ins. Co. v. Total Roofing and Const. Services, Inc.*, No. 2013 CH 20823, 2016 WL 531025, *4 (Ill.Cir.Ct. Feb. 8, 2016).

facts, had they chosen to actually sue. *William J. Templeman Co. v. Liberty Mut. Ins. Co.*, 735 N.E.2d 669, 676 (Ill.App. 2000) ("[i]t is not sufficient that the facts alleged could have been framed in a different proceeding to cover a cause of action which would fall within the policy," but instead, "it must be demonstrated that the facts alleged were sufficient to permit recovery for the potentially covered cause of action in the same proceeding in which the action was initiated…").

The Court in the underlying action here plainly has no jurisdiction to make any award to any individual unit owner for damage to his personal property, any more than it has jurisdiction to enter judgment in favor of an individual unit owner for personal injury.  Any such claim on behalf of a unit owner would have to be asserted by the unit owner himself or a proper representative (such as a subrogee) – period. *West Van Buren*, ¶s 18-26; *Walker v. Ridgeview Const. Co., Inc.*, 736 N.E.2d 1184, 1187-88 (Ill.App. 2000); 735 ILCS §5/2-403(c); *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 380-82, 70 S.Ct. 207 (1949).  The Association clearly could not make such a claim, and did not even attempt to do so.  The exclusive responsibility for personal property owned by unit owners lies with the unit owners themselves, and they simply are not parties to the underlying case here.  Therefore, any such damage is irrelevant to the duty to defend.

Even if "the general allegations of the complaint [do] not logically foreclose the theoretical possibility that the complaint alleged damage to property beyond the

-44-

defective products, the insurer's duty to defend while broad, is not without limits."

*Lagestee-Mulder, Inc. v. Consolidated Ins. Co.*, 682 F.3d 1054, 1059 (7th Cir. 2012). "Implied

claims that are not specifically alleged can be ignored." *Id*. "[I]t is the actual complaint,

and not a hypothetical version that must be considered when determining whether an

insurer's duty to defend was triggered." *Id*. The Court "cannot read into the complaint

something that is not there, but rather [is] confined to what was actually alleged." *West

Van Buren*, ¶ 20 ("We do not believe a free-standing reference to a fact, that is not

attached to any particular theory of recovery or particular party in the complaint, can

trigger a duty to defend").

The Association's complaint does not seek to recover for damage to any unit

owner's personal property and, as a matter of law, it could not even in theory do so. As

such, there is no potential for coverage for property damage to "other" property under

the Westfield policy.

### 3.    The Undisputed Evidence Confirms that the Condominium Association Did Not Even Intend to Make a Claim for Damage to the Personal Property of its Unit Owners.

The undisputed evidence from the Association itself and its attorney confirms

that it does not even *purport* to bring suit for any personal property damage. Although

the duty to defend is determined in the first instance by reference to the underlying

complaint itself, Illinois law does allow the insurer to also rely on such facts outside the

complaint to defeat the duty to defend. *See, e.g.: Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1019-21 (Ill. 2010) (Dkt. 69 at 9-10; Dkt. 74 at 11-12).

Counsel for the Association and its FRCP 30(b)(6) witness could not have been more clear – the Association has never purported to raise any claim on behalf of any of its unit owners for any claims of damage to their personal property (Dkt. 72-2 at 11-34; Dkt. 72-3). Despite the awkward, last-minute reference to this personal property damage in the complaint, it was never actually part of the association's claim.

### 4. None of the Claims Pled by the Condominium Association Would Give Rise to Any Recovery for Property Damage.

Finally, it must also be pointed out that the underlying third amended complaint alleges no cause of action which could, even in theory, support a claim for damage to personal property, even if the unit owners were plaintiffs. The remedy for Breach of the Implied Warranty of Habitability (Count I) is limited to compensation for the cost of correcting the defects, completing any necessary construction, or for any diminution in value attributable to the defects. *Abrams v. Rapoport*, 516 N.E.2d 943, 946 (Ill.App. 1987); *Abram v. Litman*, 501 N.E.2d 370, 372-73 (Ill.App. 1986); *Auburn v. Amoco Oil Co.*, 435 N.E.2d 780, 782-83 (Ill.App. 1982).

It is well-settled that "breach of the implied warranty [of habitability] does not give rise to a cause of action for…property damage." *Stoneridge Development Co., Inc. v. Essex Ins. Co.*, 888 N.E.2d 633, 648 (Ill.App. 2008). The fact that such a claim could not

even in theory give rise to a recovery for personal property damage should *alone* rule out any possibility of coverage for McHugh, since this is the *only* claim it faces in the underlying case (Dkt. 54-2 at 2-11, *passim*; Dkt. 93 at 4-6, ¶s 13-17).

This same argument also alone rules out any duty to defend or indemnify National, since the only claims against National in the underlying case are asserted by McHugh in its third-party complaint, which merely seeks to hold National liable "to the extent it is determined that McHugh is liable to Plaintiff…" (Dkt. 1-5 at 3, ¶ 4; Dkt. 28-1 at 3, ¶ 4).[12]  The fact that McHugh amended its third-party complaint to add a "negligence" count against National after Westfield filed this declaratory judgment action does not change the fact that the *only* claim against McHugh in the first instance is one for which the plaintiff could not even in theory recover for any damage to personal property (Dkt. 28-1 at 8, ¶ 25; Dkt. 86 at 7-8, ¶s 19-21).

The additional claims against 200 North and CMZ are equally incapable of supporting a recovery for damage to anyone's personal property.  Counts II through V merely allege economic loss for repair and as a result of Defendants' misrepresentations of fact, under a variety of theories, none of which have been urged by Defendants as a basis to impose the duty to defend (Dkt. 54-2 at 12-18).  Under any reading, the

---

[12] All claims by the plaintiff Association against National were dismissed prior to the filing of the underlying third amended complaint, and National does not claim any previous version of the underlying complaint triggered the duty to defend (Dkt. 75 at 3, ¶s 10-12; Dkt. 86 at 4-5, ¶ 13, n. 1; Dkt. 86 at 7, ¶ 18).

underlying condominium association plaintiff seeks only damages for injury to the building itself and other economic loss, which is all it would be empowered to seek under the operative statute and the theories pled, and such damages are categorically outside the scope of a CGL policy.

The Court should thus hold that Westfield has no duty to defend or indemnify any of the Defendants against claims based upon such non-covered damages. By any measure, the underlying case is one for non-covered construction defects, not for covered "property damage" caused by an "occurrence."

### III.    THE DISTRICT COURT'S THEORY THAT DAMAGE TO THE BUILDING ITSELF IS COVERED BASED UPON THE ADDITIONAL INSURED ENDORSEMENT IS DEEPLY FLAWED, BECAUSE THAT SECTION OF THE POLICY DOES NOT EXPAND THE SCOPE OF COVERAGE AT ALL.

The District Court held that although Illinois law for decades has consistently provided that a CGL policy does not cover damage to the "building itself," that principle is flipped on its head if the policy at issue happens to be issued to a subcontractor, as opposed to a general contractor, architect, developer or other construction-related entity. (Dkt. 126 at 1, 10-17; A.2-18). The District Court explicitly acknowledged that "Illinois courts find that, in order for a construction defect to qualify as an 'occurrence,' it must damage something other than the 'project itself' or the 'building itself,'" but then abruptly concluded that this area of the law is "unsettled." (Dkt. 126 at 9-10; A.10-11).

This area of the law is anything but "unsettled." *Lagestee-Mulder, Inc. v. Consolidated Ins. Co.*, 682 F.3d 1054, 1057 (7th Cir. 2012) (describing the rule as "settled" that "there must be damage to something other than the structure, i.e., the building…"). As argued above, few propositions of Illinois insurance coverage law are so well-established as this bright-line rule.

Somehow, the District Court's decision – while acknowledging the solid line of Illinois authority argued above – interprets the Additional Insured Endorsement to do away with the established construction defect coverage test of whether the damage at issue is to the "building itself," and substitutes in its place a new test which potentially provides coverage for literally *all* property outside the scope of the named insured subcontractor's work (Dkt. 126 at 10-17; A.11-18).  No previous Illinois case has ever followed this line of reasoning, and this Court should not either.

The District Court held that National was in fact covered for damage to the "building itself" (presumably, for everything besides the paint), on the theory that *its* "project" was only the paint, not the building as a whole ("The damages claimed [in the underlying complaint], including to the Building's ceilings, drywall and floors, are beyond the scope of [the Named Insured's] work and thus are covered damages…") (Dkt. 126 at 17; A.18).  It then extended that finding to the general contractor and the developers, even though they have never disputed that they are each responsible for the

entire construction project. (Dkt. 126 at 1, 4, 17; A.2-18).  All previous Illinois precedent on this point has rejected that proposition, reasoning that there is just *one* "product" in a construction defect case based on a new building – the completed building itself, not thousands of disparate products which are capable of injuring one another.

The District Court decision is fundamentally at odds with the well-settled proposition that additional insured coverage is not *broader* than, but in fact *narrower* than the coverage offered the named insured in the same CGL policy.  The Additional Insured Endorsements in the Westfield policies merely modify the definition of "Who is an Insured" in Section II of the policy to provide that the additional insureds are covered under their painting subcontractor's policy, but "only with respect to liability arising out of 'your [*i.e.*, National's] work' at the location designated in the schedule of this endorsement performed for that insured and included in the 'products-completed operations hazard.'" (Dkt. 1-9 at 64; Dkt. 126 at 7; A.8).  Nothing in this section of the policy is intended to **expand** the scope of coverage provided, whatsoever.  The scope of coverage is addressed in the Coverage Grant, which is in Section I of the policy, which the Additional Insured Endorsement does not modify at all (Dkt. 1-9 at 36).

"[T]he purpose of additional insured coverage is to protect the additional insured from claims of vicarious liability, that is, liability based entirely on the relationship between the two insureds, as opposed to any active negligence on the part of the

-50-

additional insured," and that there is no duty to defend or indemnify an additional insured where "all the allegations concern the [additional insured's] own, independent tortious conduct" and "[n]one of the allegations suggest in any way that the [additional insured] could be held vicariously liable for tortious acts or omissions of [the named insured]." *Liberty Mut. Fire Ins. Co. v. Woodfield Mall, L.L.C.*, 941 N.E.2d 209, 221-23 (Ill.App. 2010); see also: *American Trucking & Transp. Ins. Co. v. Allied Tube & Conduit Corp.*, 491 Fed.Appx. 756, 757 (7th Cir. 2012) ("Generally, the purpose of including additional insureds in insurance policies is to protect the additional insured from liability resulting from the named insured's negligence"); *Lincoln General Ins. Co. v. Federal Const., Inc.*, No. 09 C 6087, 2010 WL 4978852, *2 (N.D.Ill. Dec. 2, 2010) ("the additional insurance is provided only for vicarious liability imputed to [the additional insured] by the acts or omissions of [the named insured], but not for [the additional insured's] own negligence").

Such coverage is merely a supplement to the additional insured's own CGL coverage, for those limited instances where it is vicariously liable for its subcontractor's torts. "This limitation on coverage recognizes that businesses in the construction industry carry coverage for liability arising out of their own work, and assumes that [the additional insured general contractor] would have its own general liability coverage." *American Country Ins. Co. v. Cline*, 722 N.E.2d 755, 762 (Ill.App. 1999).

As Defendants would have it, however, this limited additional insured coverage would, by definition, obviate any need for a general contractor to carry its own CGL coverage.  As an additional insured on policies issued to the painter, the electrician, the plumber, the carpenter and so on, a developer or general contractor could trigger coverage under multiple policies for *any* damage to the "building itself." Such a result would turn decades of Illinois law on its head.

These endorsements do not *add* anything to the scope of coverage.  None in any way amends the language of the Coverage Grant in Section I., particularly the condition that any covered "property damage" be caused by an "occurrence," which is the pertinent language precluding coverage for damage to the construction project itself.

Contrary to the District Court's conclusion, numerous construction defect cases based on damage to the building itself have held that the fact that the coverage at issue was sought by an *additional* insured general contractor or developer, as opposed to the *named* insured subcontractor, has absolutely no impact on the analysis. See, e.g.: *Lagestee-Mulder, Inc. v. Consol. Ins. Co.*, 682 F.3d 1054, 1057 (7th Cir. 2012) (holding no duty to defend or indemnify additional insured general contractor for construction defect claims under CGL policy issued to window and door subcontractor, reasoning that "[w]here the underlying suit alleges damage to the construction project *itself* because of a construction defect, there is no coverage"); *Westfield Ins. Co. v. West Van*

*Buren, LLC*, ___N.E.2d___, 2016 IL App (1st) 140862, ¶ 18 (Ill.App. 2016) (no coverage for additional insured developer under subcontractor's policy, reasoning that "there is no occurrence when a subcontractor's defective workmanship necessitates removing and repairing work and where the damages claimed are the natural and ordinary consequences of defective workmanship"); *Acuity v. Lenny Szarek, Inc.*, 13 C 7505, 2015 WL 5163195, *5 (N.D.Ill. Sept. 2, 2015) (no duty to defend or indemnify additional insured developer and general contractor under CGL policy issued to subcontractor, reasoning that "[t]he only judgment that could issue would be for property damage to the condominium building itself, which *is not* covered…, emphasis in original); *Hartford Cas. Ins. Co. v. Construction Builders in Motion, Inc.*, 966 F.Supp.2d 777, 788 (N.D.Ill. 2013) (holding no duty to defend developers against construction defect claims under policies issued to subcontractors, reasoning that "[t]here is no coverage where the underlying suit alleges a scope of damages that extends only to the construction project itself as a result of construction defects or faulty workmanship").

There simply is no basis in the language of the Additional Insured Endorsement or existing precedent for the result reached by the District Court. When predicting state law on a question that could go either way, a federal court should choose the narrower interpretation of the law that restricts liability. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 607 (7th Cir. 2000); see also: *Birchler v. Gehl Co.*, 88 F.3d 518, 521 (7th Cir. 1996) ("When we

are faced with opposing plausible interpretations of state law, we generally choose the narrower interpretation which restricts liability, rather than the more expansive interpretation which creates substantially more liability").

Illinois law is not the least bit "unsettled" when it comes to the question of whether damage to a new-construction building caused by defects in its construction constitutes "property damage" caused by an "occurrence," as those terms are defined in a standard-form CGL policy. That question has been answered numerous times in the negative – at least three times by this Court alone – over the course of several decades. The Illinois Supreme Court has shown no inclination to change that settled point of law, though it has had numerous opportunities to do so. The standard proposed by the District Court in this case is a radical departure from settled Illinois law and should be reversed.

## CONCLUSION

This is a run-of-the-mill construction defect coverage case. Decades of Illinois jurisprudence have taught that such claims are categorically not covered under a standard CGL policy. This is a legal issue which this Court has correctly predicted time and again, and there is no basis to change course at this juncture. The fact that some of the unit owners may have suffered some incidental damage to their personal property does not distinguish this case, because they evidently chose not to sue for such damage.

There could be no dispute on the record before this Court that the *actual* claims in the underlying case are for nothing more than damage to "the structure itself," which is plainly not covered.

The Court should see the underlying complaint for what it is – a claim which consists solely of economic loss to purchasers of a condominium building, based solely upon damage to the building itself.  Once it became clear through this declaratory judgment action that such a claim is categorically not covered, a desperate effort was made to assert some damage – however trivial – to something other than the building itself, in order to coerce Westfield into paying the defense fees and costs for a suit which could never give rise to any covered damages.

The three water-stained couches trumpeted by the insureds, however, are owned by individuals who have evidently chosen not to sue for the damage.  The Association cannot "borrow" these purported damages to trigger insurance coverage where none would otherwise exist.  Its counsel and corporate representative deponent are clearly aware that the Association could never have standing to affirmatively seek such damages, and that none of the causes of action at issue in the underlying suit could even in theory support such a claim, and have candidly conceded as much.  The Court should recognize this game for what it is.

The District Court's proposed new rule completely re-allocates the distribution of

risk agreed to by the parties, giving the Defendants an enormous windfall.[1]   If implemented, this new approach would drastically distort the market for this broad, affordable type of coverage, essentially forcing the entire premium-paying public to shoulder the burden created by the decisions of a few contractors and developers to cut corners, with catastrophic consequences.  This Court should find that Westfield has no duty to defend or indemnify the Defendants, reverse the judgment and enter judgment in Westfield's favor accordingly.

Respectfully submitted:


/s/  David S. Osborne
DAVID S. OSBORNE
CHRISTOPHER J. PICKETT
**LINDSAY, RAPPAPORT & POSTEL, LLC**
10 S. LaSalle Street, Suite 1301
Chicago IL 60603
312-800-6025
*Attorneys for Plaintiff-Appellant*
*Westfield Insurance Company*

---

[1] The additional insured coverage at issue here cost just $750 per year, while the premium for the general liability coverage in the initial policy period was in excess of $40,000 (Dkt. 1-9 at 30).

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing Brief and Short Appendix of Plaintiff-Appellant Westfield Insurance Company complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 13,999 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

The undersigned further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 2010 in 12 point Palatino Linotype font.

/s/  David S. Osborne
DAVID S. OSBORNE

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all material required by Circuit Rule 30(a) and (b) are included in the Appendix.

/s/  David S. Osborne
DAVID S. OSBORNE

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2016, the Brief and Short Appendix of Plaintiff-Appellant Westfield Insurance Company was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system.

The following participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system:

*Attorney for:  National Decorating Service, Inc.*
Stephen R. Swofford                                 Email:  sswofford@hinshawlaw.com
Kevin R. Sido                                            Email:  ksido@hinshawlaw.com
Hinshaw & Culbertson, LLP
222 North LaSalle Street, Suite 300
Chicago, IL  60601


*Attorney for:  James McHugh Construction Co.*
Christopher M. Cano                              Email:
Robert J. Franco                                      chris.cano@francomoroney.com
Scott O. Reed                                           Email:
Franco & Moroney, LLC                          robert.franco@francomoroney.com
500 West Madison Street, Suite 2440     Email:
Chicago, IL  60661                                   scott.reed@francomoroney.com



*Attorney for:  200 North Jefferson, LLC* and
*MCZ/Jameson Development Group, LLC*
Jean G. Wine                                          Email:  jwine@steinraylaw.com
Stein Ray LLP
222 West Adams Street, Suite 1800
Chicago, IL  60606


                                                              /s/  David S. Osborne
                                                              DAVID S. OSBORNE

# APPENDIX

## TABLE OF CONTENTS OF APPENDIX

Page

November 25, 2015 Minute Order of the District Court (Dkt. 125) .................................. A.1

November 25, 2015 Opinion and Order of the District Court (Dkt. 126).................... A.2-19

February 2, 2016 Judgment of the District Court (Dkt. 146) ........................................... A.20

May 3, 2016 Order of the District Court, granting in part and
denying in part Defendants' Motion to Alter or Amend Judgment (Dkt. 167) ............ A.21

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6,1
### Eastern Division

Westfield Insurance Company

                          Plaintiff,

v.                                      Case No.: 1:14−cv−01572
                                      Honorable John Robert Blakey

National Decorating Service, Inc., et al.

                          Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, November 25, 2015:

       MINUTE entry before the Honorable John Robert Blakey: Enter Memorandum Opinion and Order. This Court grants Defendants' summary judgment motions [65] [73] [76] [123] and denies Plaintiff's cross−motion [70]. For administrative purposes, Defendant James McHugh Construction Co.'s corrected memo [69] and Defendant 200 North Jefferson's LLC's motion to join that correct memo [77] also are granted. A status hearing is set for 12/1/15 at 9:45 a.m. in Courtroom 1725 to address the status of Defendant 200 North Jefferson, LLC's Cross−Claim [33]. This Court will strike the 12/1/15 status hearing and close out this case if the Cross−Claim is dismissed before that date. Mailed notice(gel, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

A.1

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Westfield Insurance Co.,

       Plaintiff,

       v.

National Decorating Service, Inc.,
James McHugh Construction Co.,
200 North Jefferson, LLC and
MCZ/Jameson Development Group, LLC

       Defendants.

Case No. 14 C 1572

Judge John Robert Blakey

## <u>MEMORANDUM OPINION AND ORDER</u>

This case presents a straightforward, but unsettled, question of Illinois law: Is there an "occurrence" under standard-form comprehensive general liability ("CGL") policies when the named insured contractor's faulty workmanship causes damage to a building that is beyond the scope of its own work there? The answer to that question determines whether Plaintiff Westfield Insurance owes a duty to defend Defendants—its Named Insured (National Decorating) and Additional Insureds (200 North Jefferson, McHugh Construction and MCZ/Jameson)—in the faulty workmanship case pending in the Circuit Court of Cook County. The underlying case is captioned: *Board of Managers of 200 North Jefferson Tower Condominium Association v. 200 Jefferson, LLC*, Case No. 12 L 480 (the "Underlying Action").

The parties now cross-move for summary judgment, disputing which line of conflicting case law this Court should follow.  Having reviewed the case law and having considered the CGL policy language here and the purpose behind CGL insurance, this Court grants Defendants' summary judgment motions [65] [73] [76] [123]; and denies Plaintiff's cross-motion [70].

I.    **Legal Standard**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014).  A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party, here, each party with respect to the other's motion.  *See CTL ex rel. Trebatoski v. Ashland School District*, 743 F.3d 524, 528 (7th Cir. 2014).

A.3

## II.    Facts[1]

### A.    The Underlying Action

On January 3, 2012, the Board of Managers of 200 North Jefferson Tower Condominium Association (the "Association") filed the Underlying Action in the Circuit Court of Cook County, naming 200 North Jefferson, LLC ("200 North Jefferson"), James McHugh Construction Co. ("McHugh Construction"), MCZ/Jameson Development Group, LLC ("MCZ/Jameson"), National Decorating Service, Inc. ("National Decorating") and others as defendants. Westfield SOF ¶ 10. The Association filed the operative five-count Third Amended Complaint on November 4, 2014. McHugh SOF ¶ 9; Westfield SOF ¶ 12.

The Underlying Action arises from the construction of a 24-story condominium building located at 200 North Jefferson Street, Chicago, Illinois (the "200 North Jefferson Building" or the "Building"). Westfield SOF ¶ 13(a). 200

---

[1]   The facts are taken from the parties' Local Rule 56.1 statements and the exhibits thereto.

"200 North SOF" refers to 200 North Jefferson's statement of undisputed facts [78], with Plaintiff's responses [87]. "200 North SOAF" refers to 200 North Jefferson's statement of additional facts [92], with Plaintiff's responses [105].

"McHugh SOF" refers to McHugh Construction's statement of undisputed facts [67], with Plaintiff's responses [89]. "McHugh SOAF" refers to McHugh Construction's statement of additional facts [93], with Plaintiff's responses [103].

"MCZ SOF" refers to MCZ/Jameson's statement of undisputed facts [123], with Plaintiff's responses [123].

"National Decorating SOF" refers to National Decorating's statement of undisputed facts [75], with Plaintiff's responses [88]. "National Decorating SOAF" refers to National Decorating's Construction's statement of additional facts [86], with Plaintiff's responses [104].

"Westfield SOF" refers to Plaintiff's statement of undisputed facts [72], with responses from 200 North Jefferson [92], McHugh Construction [93] and National Decorating [86]. "Westfield SOAF" refers to Plaintiff's multiple, identical statements of additional facts [87] [88] [89], with responses from 200 North Jefferson [100], McHugh Construction [98] and National Decorating [101].

North Jefferson was the owner and developer of the Building.  200 North SOF ¶ 5.
200 North Jefferson retained McHugh Construction to be its general contractor.
200 North SOF ¶ 6; McHugh SOF ¶ 3; Westfield SOF ¶ 13(d).  Pursuant to a May
13, 2005 contract, McHugh Construction retained National Decorating as a
subcontractor to perform all painting work at the 200 North Jefferson Building.
McHugh SOF ¶ 4; Westfield SOF ¶ 13(e).

In the *Association* Third Amended Complaint, the Association sought
recovery for damages caused by various categories of faulty workmanship at the 200
North Jefferson Building.  The damages included: (1) significant cracking of the
exterior concrete walls, interior walls and ceilings; (2) significant leakage through
the exterior concrete walls, balconies and windows; (3) defects to the common
elements of the Building; and (4) damage to the interior ceilings, floors, interior
painting, drywall and furniture in the units.  McHugh SOF ¶¶ 9-10; National
Decorating SOF ¶ 11; Westfield SOF ¶ 13(f).  In Count I, the Association brought a
claim for breach of the implied warranty of habitability against 200 North Jefferson,
McHugh Construction, MCZ/Jameson and National Decorating for, among other
things, the cost of investigating and correcting the aforementioned defective work
and property damage.  200 North SOF ¶ 19; McHugh SOF ¶ 11; MCZ/Jameson SOF
¶ 4; Westfield SOF ¶ 13.

Also in the Underlying Action, on January 9, 2014, McHugh Construction
filed a Third-Party Complaint against National Decorating.  Westfield SOF ¶ 19.
The operative Amended Third-Party Complaint contains three causes of action

A.5

against National Decorating based on the Underlying Action: breach of contract (Count I); breach of express contractual defense and indemnity (Count II); and negligence (Count III). Westfield SOF ¶¶ 20-21. There also are two causes of action directed against another party that are not relevant to this coverage dispute. In Counts I to III, McHugh Construction alleged that National Decorating's faulty workmanship damaged "the work of other trades on the project, specifically resulting in the peeling and cracking of drywall." Westfield SOF ¶¶ 20-21. Count III measured McHugh Construction's damages as the cost of repairing National Decorating's faulty workmanship and "damage to the work of other trades on the project, including the peeling and cracking of drywall." Westfield SOF ¶ 21.

**B.    Coverage Dispute**

Plaintiff Westfield Insurance Company ("Westfield Insurance") disputes that it owes Defendants a duty to defend under Policy No. TRA 4 248 979 (the "Westfield Insurance Policy" or the "Policy"). Westfield SOF ¶ 22. The Policy is an "occurrence"-based CGL policy issued to National Decorating as the Named Insured. 200 North SOAF ¶ 43; McHugh SOF ¶ 1; National Decorating SOF ¶ 13; Westfield SOF ¶ 22. The Westfield Insurance Policy was initially effective from February 28, 2008 to February 28, 2009 and was renewed three times, until it expired on November 1, 2011. McHugh SOF ¶ 2; Westfield SOF ¶ 23. The operative policy language remained the same throughout that period.

In the Insuring Agreement, the Westfield Insurance Policy provides that Plaintiff:

A.6

> … will pay those sums that the insured becomes legally obligated to
> pay as damages because of "bodily injury" or "property damage" to
> which this insurance applies.  We will have the right and duty to
> defend the insured against any "suit" seeking those damages.
> However, we will have no duty to defend the insured against any "suit"
> seeking damages for "bodily injury" or "property damage" to which this
> insurance does not apply.  We may, at our discretion, investigate any
> "occurrence" and settle any claim or "suit" that may result.

McHugh SOF ¶ 14; Westfield SOF ¶ 24.  The Insuring Agreement further provides
that the insurance applies only to "bodily injury" and "property damage" "caused by
an 'occurrence.'"  Westfield SOF ¶ 24.

The term "occurrence" is defined as "an accident, including continuous or
repeated exposure to substantially the same harmful conditions."  Westfield SOF ¶
24.  The Policy does not define the word "accident."  The term "property damage" is
defined in relevant part as:

> Physical injury to tangible property, including all resulting loss of use
> of that property.  All such loss of use shall be deemed to occur at the
> time of the physical injury that caused it[.]

McHugh SOF ¶ 15; Westfield SOF ¶ 24.

There is no dispute that 200 North Jefferson, McHugh Construction and
MCZ/Jameson (as clarified at the November 5, 2015 motion hearing) are Additional
Insureds under the Westfield Insurance Policy based on the contracts that they
entered into among one another and National Decorating.  200 North SOF ¶¶ 6-9,
12, 14; McHugh SOF ¶¶ 4-6, 8; MCZ/Jameson SOF ¶ 16.  The Westfield Insurance
Policy includes two Additional Insured Endorsements, and, for purposes of this
Court's analysis, there is no significance whether the Additional Insured

6

A.7

Defendants are covered by one or both Endorsements.  The first standard-form

Blanket Additional Insured Endorsement states:

> Name of Person or Organization:
> ANY PERSON OR ORGANIZATION FOR WHOM YOU ARE
> PERFORMING OPERATIONS WHEN YOU AND SUCH PERSON OR
> ORGANIZATION HAVE AGREED IN WRITING ON A CONTRACT
> OR AGREEMENT THAT SUCH A PERSON OR ORGANIZATION BE
> ADDED AS AN ADDITIONAL INSURED ON YOUR POLICY.
>
> ***
>
> **Section II – Who Is An Insured** is amended to include as an insured
> the person or organization shown in the Schedule, but only with
> respect to liability arising out of "your work" at the location designated
> in the schedule of this endorsement performed for that insured and
> included in the "products-completed operations hazard."

200 North SOAF ¶ 42; McHugh SOF ¶ 7.   The second Additional Insured

Endorsement states:

> **Section II – Who Is An Insured** is amended to include as an
> additional insured the person or organization shown in the Schedule,
> but only with respect to liability arising out of your ongoing operations
> performed for that insured.

200 North SOAF ¶ 41.

The Westfield Insurance Policy defines "your work" as "work or operations

performed by you or on your behalf," and, in turn, "you" and "your" as "the Named

Insured shown in the Declarations, and any other person or organization qualifying

as a Named Insured under this Policy."  McHugh SOAF ¶¶ 1-2; National Decorating

SOAF ¶¶ 1-2.  National Decorating is the Named Insured.  200 North SOAF ¶ 43.

200 North Jefferson, McHugh Construction and MCZ/Jameson are not Named

Insureds.  200 North SOAF ¶ 44; McHugh SOAF ¶ 3; MCZ/Jameson SOF ¶ 15;

National Decorating SOAF ¶ 3.

7

A.8

### III.    Analysis

The parties seek a declaration whether Plaintiff owes a duty to defend Defendants—its Named Insured (National Decorating) and Additional Insureds (200 North Jefferson, McHugh Construction and MCZ/Jameson)—in the Underlying Action.    There is no dispute that the costs to repair and replace National Decorating's faulty painting work are not covered.    Instead, the parties dispute whether the damage National Decorating caused to parts of the 200 North Jefferson Building beyond its scope of work triggers Plaintiff's duty to defend.  200 North SOF ¶ 19; McHugh SOF ¶¶ 9-11; National Decorating SOF ¶ 11; Westfield SOF ¶ 13, 13(f).    This Court's determination of coverage turns on whether this "property damage" resulted from an "occurrence," meaning an "accident."  Westfield SOF ¶ 24. The term "accident" is not defined by the Westfield Insurance Policy.    Plaintiff raises no other coverage defenses in its summary judgment motion.

Under Illinois law, which applies here, to determine whether Plaintiff owes a duty to defend, this Court must compare the allegations in the underlying complaint, here, the *Association* Third Amended Complaint and the *McHugh Construction* Amended Third-Party Complaint, with the insurance policy language. *Lagestee-Mulder, Inc. v. Consolidated Insurance Co.*, 682 F.3d 1054, 1056 (7th Cir. 2012).  The duty to defend is broader than the duty to indemnify because insurers must defend their policyholders in actions that are even potentially within coverage. *Lagestee-Mulder*, 682 F.3d at 1056; *CMK Development Corp. v. West Bend Mutual Insurance Co.*, 917 N.E.2d 1155, 1163 (Ill. App. Ct. 2009).  The factual allegations in

A.9

the underlying complaint determine whether a duty to defend exists. If the underlying complaint alleges facts within or potentially within policy coverage, insurers are obligated to defend their policyholders, even if the underlying allegations are groundless, false or fraudulent. *CMK Development*, 917 N.E.2d at 1163. Because the duty to defend includes claims even potentially within coverage, this Court will declare that Plaintiff owes no duty to defend only if it is clear from the face of the underlying complaint that the stated facts do not fall within the scope of coverage. *Lagestee-Mulder*, 682 F.3d at 1056.

The construction of an insurance policy is a question of law. *Milwaukee Mutual Insurance Co. v. J.P. Larsen, Inc.*, 956 N.E.2d 524, 527 (Ill. App. Ct. 2011). Illinois cases interpreting identical, standard-form "occurrence" language, which defines "occurrence" as an "accident," have added a gloss to the word "accident." The "natural and ordinary consequences of faulty construction," such as the cost to repair and replace the faulty workmanship itself, are not accidental and thus are not a covered "occurrence." *Lyerla v. AMCO Insurance Co.*, 536 F.3d 684, 689 (7th Cir. 2008); *see also Nautilus Insurance Co v. Board of Directors of Regal Lofts Condominium Association*, 764 F.3d 726, 731 (7th Cir. 2014); *J.P. Larsen*, 956 N.E.2d at 531; *Viking Construction Management, Inc. v. Liberty Mutual Insurance Co.*, 831 N.E.2d 1, 11-12 (Ill. App. Ct. 2005). As one Court stated, a "CGL policy does not cover an accident of faulty workmanship but rather faulty workmanship that causes an accident." *Pekin Insurance Co. v. Richard Marker Associates, Inc.*, 682 N.E.2d 362, 366 (Ill. App. Ct. 1997) (internal quotations omitted). Thus, Illinois

9

A.10

courts find that, in order for a construction defect to qualify as an "occurrence," it must damage something other than the "project itself" or the "building itself." *E.g.*, *J.P. Larsen*, 956 N.E.2d at 531-32; *CMK Development*, 917 N.E.2d at 1164-65; *Monticello Insurance Co. v. Wil–Freds Construction, Inc.*, 661 N.E.2d 451, 456-57 (Ill. App. Ct. 1996). The parties dispute the contours of this rule.

*Ohio Casualty Insurance Co. v. Bazzi Construction Co., Inc.*, 815 F.2d 1146 (7th Cir. 1987), and *J.P. Larsen*, *supra*, instruct that this Court must examine the scope of National Decorating's work, as the Named Insured, when determining if there is "property damage" resulting from an "occurrence." This controlling case law, along with the CGL policy language and the purpose behind CGL insurance, compels this Court's conclusion that damage beyond the scope of the named insured's work at a building is "property damage" resulting from an "occurrence."

In *Bazzi Construction*, 815 F.2d at 1148-49, the Seventh Circuit found that the insurer owed a duty to defend the named insured general contractor, emphasizing the limited scope of work performed by the named insured. The named insured was tasked with remodeling an existing garage for use as a meat market, and, to that end, added a new second story to the garage. *Id.* at 1146-47. The structural integrity of the existing garage, however, was compromised, causing the owners in the underlying action to seek damages for having to reinforce the roof joists and the steel columns in the garage, and for having to tear down and rebuild the second floor. *Id.* at 1147-48.

10

A.11

Although the named insured worked on part of the garage, the Seventh Circuit nonetheless found a duty to defend. The Court explained that the owners had alleged damage to property beyond the scope of the named insured's work, that is, to other parts of the garage. *Id.* at 1148. By comparison, had the named insured been charged with constructing an entirely new garage, then damages to any part of the garage would not have been covered. *Id.* at 1148-49. The damages in this hypothetical would have fallen within the scope of the named insured's work—the entire garage. That was not the case in *Bazzi Construction*, nor is it the case here.

The Appellate Court in *J.P. Larsen*, 956 N.E.2d at 526, also found that the insurer had a duty to defend the named insured—this time, the subcontractor. The named insured subcontractor applied sealant to windows installed by the general contractor in a condominium building. *Id.* at 526. The windows leaked, however, damaging the condominium common elements, the units and the unit owners' personal property. *Id.* at 526, 528-29. Similar to here, the condominium association sued the general contractor for breach of express and implied warranties, seeking recovery for the cost to repair the faulty work and the attending damages. *Id.* at 526, 528-30. The general contractor, in turn, sued the named insured subcontractor for contribution. *Id.* The named insured tendered its defense to its insurer, and the insurer denied any duty to defend based on the absence of "property damage" resulting from an "occurrence." *Id.* at 526.

The Appellate Court disagreed. The Court began, based on its survey of Illinois law (including *Viking Construction* and other cases cited by Westfield

11

A.12

Insurance), with the principle that "damage to something other than the project itself *does* constitute an 'occurrence' under a CGL policy." *J.P. Larsen*, 956 N.E.2d at 532 (emphasis in original). Such damage had been pled in the underlying action. The Appellate Court explained that the underlying damages sought by the condominium association were neither intangible nor limited to the cost to repair or replace the faulty window sealant. *Id.* at 530-31. Instead, the underlying damages included personal property and water damage "throughout a building not constructed by [the named insured]." *Id.* at 532. Thus, as here, there was more than just an allegation of damage to the subcontractor's defective work. *Id.*

Also instructive, and perhaps the most on-point case, is *Old Republic Insurance Co. v. Leopardo Cos., Inc.*, No. 14-2421 (N.D. Ill. March 11, 2015) (Dkt. 55) (unavailable on LexisNexis and Westlaw). In that case, the Court found that the insurer had a duty to defend the general contractor and thus granted the general contractor's summary judgment motion and denied the insurer's cross-motion. Like McHugh Construction here, the general contractor in *Leopardo* was an additional insured on a policy procured by its subcontractor. *Leopardo Op.* at 1. Also as here, the coverage dispute arose from the subcontractor's faulty workmanship. *Id.* The subcontractor installed defective fan coil units as part of a hotel renovation, causing moisture and water to drip onto guestroom ceilings and damage walls, surrounding construction materials and the fit and finishes of each guestroom. *Id.* at 1-2. The hotel sued the general contractor for these damages in the underlying action. *Id.* at 2.

12

A.13

The Court found that the insurer had a duty to defend the general contractor in the ensuring coverage action, and it rejected the insurer's argument that the underlying complaint did not allege damage to something other than the project itself. *Id.* at 5-8. The premise of the insurer's argument—that coverage depended on the scope of the general contractor's work—was incorrect. *Id.* at 5. As the Court explained, coverage depended on the scope of the subcontractor's work as the named insured, as shown by the policy as a whole. The Court pointed to the Additional Insured Endorsement, which is materially indistinguishable from the ones here. The Endorsement confirmed that the named insured's scope of work determined whether the underlying complaint alleged "property damage" caused by an "occurrence," because the coverage provided to additional insureds was defined in relation to the named insured's work. *Id.* at 6-7. The Endorsement stated that it provided:

> … coverage only with respect to liability for bodily injury or property damage caused, in whole or in part, by your acts or omissions; or the acts or omission of those acting on your behalf in the performance of your ongoing operations for the additional insured.

*Id.* at 6. The policy in *Leopardo*, like the Westfield Insurance Policy, defined the term "your" as the "Named Insured." *Id.*

Against this Court's analysis, Plaintiff's argument that the Court in *Leopardo* misunderstood the purpose of additional insured coverage fails. Plaintiff argues that additional insured coverage is meant to cover the additional insured for vicarious liability claims only and not their own negligence, but, even if that

13

A.14

argument is credited, it does not rebut the Court's interpretation of the insurance policy as a whole to interpret the term "occurrence."

Moreover, even if Plaintiff's argument had merit (and it does not), the Court's conclusion in *Leopardo* was bolstered by its analysis of the purpose behind CGL insurance, and this Court finds that analysis persuasive. *Id.* at 7. Purpose is instructive when interpreting insurance policies. *J.P. Larsen*, 956 N.E.2d at 527, 530; *CMK Development*, 917 N.E.2d at 1167-68. The Court in *Leopardo*, citing the Seventh Circuit's decision in *Lagestee-Mulder*, 682 F.3d at 1057, explained that CGL insurance is not intended to pay the costs associated with repairing or replacing the policyholder's defective work and products, which is an economic loss. *Leopardo Op.* at 7. That coverage would render insurance akin to a performance bond and could result in the insured contractor being paid twice for defective work (once by the customer and a second time by the insurer). *Leopardo Op.* at 5; *see also J.P. Larsen*, 956 N.E.2d at 530. Instead, CGL insurance is meant to protect the policyholder from liability for damage to the property of others. *Leopardo Op.* at 7. As such, the Court found coverage for damage beyond the scope of the named insured subcontractor's work.

In contrast to these cases, Plaintiff, despite citing extensive case law, identifies just four cases finding no duty to defend when the named insureds caused property damage to parts of the building or project outside the scope of their work. This Court excludes from its analysis a fifth case, *Paradise Inground Pools, Inc. v. Black Diamond Plumbing & Mechanical, Inc.*, 2012 IL App (2d) 110819-U (no North

14

A.15

Eastern Reporter cite available), which is a non-precedential opinion under Illinois Supreme Court Rule 23. In any event, none of Plaintiff's cases convince this Court to reach Plaintiff's desired outcome. In each case, the Court relied on the general language from earlier cases that a contractor's damage to a "building" or "project" that results from its defective construction is not a covered "accident." *Acuity v. Lenny Szarek, Inc.*, No. 13-7505, ___ F. Supp. 3d ___, 2015 WL 5163195, at *7 (N.D. Ill. Sept. 2, 2015); *American Fire & Casualty Co. v. Broeren Russo Construction, Inc.*, 54 F. Supp. 2d 842, 848-49 (C.D. Ill. 1999); *American Family Mutual Insurance Co. v. Hummel Development Group, LLC*, No. 11 CH 24601, 2013 WL 6631068, at *4-6 (Ill. Cir. Ct. Nov. 21, 2013); *QBE Insurance Corp. v. Barrier Corp.*, Nos. 11 CH 9383, 11 CH 41501, 2012 WL 6900226, at *1, 8-9 (Ill. Cir. Ct. Nov. 19, 2012). The cases, however, did not analyze the source of that language, let alone the significance of the distinctions this Court draws today.

For example, in *Broeren Russo Construction*, 54 F. Supp. 2d at 844, 847-48, the contractor's faulty installation of an Exterior Insulation Finish System caused water damage beyond the scope of its work—to interior sections of the building. The Court, however, found that there was no "occurrence," relying on *Wil-Freds Construction*, *supra*, and *Indiana Insurance Co. v. Hydra Corp.*, 615 N.E.2d 70 (Ill. App. Ct. 1993), for the proposition that "the natural results of negligent and unworkmanlike construction of a building do not constitute an occurrence." *Broeren Russo Construction*, 54 F. Supp. 2d at 847-48. While the Appellate Courts in *Wil-Freds Construction* and *Hydra* found no duty to defend, in neither case, unlike here,

15

A.16

did the named insured damage parts of the building beyond the scope of their work. In *Wil-Freds Construction*, 661 N.E.2d at 452-57, the named insured general contractor was responsible for constructing a new building and for the acts of its subcontractor, and the underlying claimant did not seek damages beyond the costs needed to repair the building. In *Hydra*, 615 N.E.2d at 72-73, 75, the named insured contractor was responsible for constructing an industrial building and there were no underlying allegations of damages to anything other than the contractor's own work. Thus, *Broeren Russo Construction* and like cases do not persuade this Court to reach a different outcome.

Perhaps more compelling for Plaintiff is *Viking Construction*. There, even though the Appellate Court was not faced with a named insured that had caused damage beyond its own work, the Court stated in *dicta* that it would have found no duty to defend even had the subcontractor damaged other parts of the building. 831 N.E.2d at 16. Yet, any weight this Court should give that brief observation is diminished by the absence of further analysis and the Appellate Court's decision six years later in *J.P. Larsen*. As discussed above, the Court in *J.P. Larsen* reached the opposite conclusion when actually faced with a named insured whose faulty work damaged other parts of the building. Far from crediting the *dicta* in *Viking Construction*, the Appellate Court in *J.P. Larsen*, 956 N.E.2d at 532, cited *Viking Construction* to find a duty to defend.

As previewed above, Plaintiff's remaining cases are inapplicable, and they do not warrant extensive discussion. They simply do not involve the fact-pattern

16

A.17

present here—the named insured contractor damaging parts of a building or project beyond the scope of its work—or the fact-pattern is not apparent from the face of the opinions. Indeed, the Court in *Leopardo* distinguished some of these same cases for this very reason. *Leopardo Op.* at 7-8. These cases do not add anything new to this Court's analysis.

Having determined that there is "property damage" resulting from an "occurrence" for any damage National Decorating caused to parts of the 200 North Jefferson Building beyond the scope of its work, it follows from the undisputed facts that summary judgment for Defendants is warranted. The damages claimed in at least Count I of the *Association* Third Amended Complaint, including to the Building's ceilings, drywall and floors, are beyond the scope of National Decorating's (the Named Insured) work and thus are covered damages based on this Court's interpretation of "occurrence." 200 North SOF ¶ 19; McHugh SOF ¶¶ 9-11; National Decorating SOF ¶ 11; Westfield SOF ¶¶ 13, 13(f). The *McHugh Construction* Third-Amended Complaint further confirms this outcome. Westfield SOF ¶¶ 20-21. While not all the underlying damages alleged in the *Association* Third Amended Complaint and the *McHugh Construction* Amended Third-Party Complaint are covered, Plaintiff owes a duty to defend Defendants in the Underlying Action where some are covered.[2] *Regal Lofts Condominium*, 764 F.3d at 731; *J.P. Larsen*, 956 N.E.2d at 528. That is the case here.

---

[2] For this reason, this Court declines to address Defendants' alternate theory for finding that Plaintiff owes them a duty to defend. Defendants argue that the damage National Decorating caused to unit owners' personal property also triggers Plaintiff's duty to defend.

17

A.18

**IV.    Conclusion**

For these reasons, this Court grants Defendants' summary judgment motions [65] [73] [76] [123] and denies Plaintiff's cross-motion [70].  As the parties agreed at the November 5, 2015 motion hearing, this Court's ruling renders premature the question of Plaintiff's duty to indemnify because the Underlying Action remains ongoing.  *See Lear Corp. v. Johnson Electric Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003).

A status hearing is set for December 1, 2015 at 9:45 a.m. in Courtroom 1725 to address the status of Defendant 200 North Jefferson, LLC's Cross-Claim [33]. This Court will strike the December 1, 2015 status hearing and close out this case if the Cross-Claim is dismissed before that date.

Dated: November 25, 2015

Entered:

United States District Judge

---

At least one Court has rejected that argument, *see Acuity*, 2015 WL 5163195, at *4-6, and this Court need not consider its merits at this time.

A.19

ILND 450 (Rev. *_/*_) Judgment in a Civil Action

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
### NORTHERN DISTRICT OF ILLINOIS

Westfield Insurance Company,

Plaintiff(s),

v.                                                    Case No.  14c1572
                                                      Judge John Robert Blakey
National Decorating Service, Inc.,

Defendant(s).

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐   in favor of plaintiff(s)
    and against defendant(s)
    in the amount of $           ,

        which ☐ includes     pre–judgment interest.
              ☐ does not include pre–judgment interest.

    Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

    Plaintiff(s) shall recover costs from defendant(s).

_____

☐   in favor of defendant(s)
    and against plaintiff(s)

.
    Defendant(s) shall recover costs from plaintiff(s).

_____

☒   other: Judgment is entered in favor of Defendants and against Plaintiffs.

_____

This action was *(check one)*:

☐ tried by a jury with Judge     presiding, and the jury has rendered a verdict.
☐ tried by Judge     without a jury and the above decision was reached.
☒ decided by Judge John Robert Blakey on a motion.


Date:   2/2/2016                          Thomas G. Bruton, Clerk of Court

                                          G. Lewis , Deputy Clerk


A.20

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 6.1.1
### Eastern Division

Westfield Insurance Company

                                        Plaintiff,

v.                                                      Case No.: 1:14−cv−01572
                                                        Honorable John Robert Blakey

National Decorating Service, Inc., et al.

                                        Defendant.
_____

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, May 3, 2016:

        MINUTE entry before the Honorable John Robert Blakey: As the Court previewed
at the 4/7/16 status hearing, this Court clarifies the obvious: nothing in the 2/2/16 Minute
Order 145 precludes the insured defendants from seeking reimbursement of their defense
costs at a later, appropriate time. Based on this clarification, National Decorating's motion
to alter or amend judgment [147] is granted in part and denied in part. Having reached this
conclusion, the other insured defendants' motions to join [155] [157] are denied as moot.
Even had those defendants not joined National Decorating's motion, the Court's
clarification of what the 2/2/16 Minute Order did not hold cannot, by its very nature, be
limited to some defendants but not others. Mailed notice(gel, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at ***www.ilnd.uscourts.gov***.

A.21